**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee*,

v.

JORGE VALDAVINOS-TORRES,
       *Defendant-Appellant*.

No. 11-50529

D.C. No.
3:11-cr-01286-
AJB-1

OPINION

On Appeal from the United States District Court
for the Southern District of California
Anthony J. Battaglia, District Judge, Presiding

Argued and Submitted
November 6, 2012—Pasadena, California

Filed December 20, 2012

Before: Alfred T. Goodwin and Diarmuid F. O'Scannlain,
Circuit Judges, and Jack Zouhary, District Judge.[*]

Opinion by Judge Zouhary

---

[*] The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed a conviction and sentence for illegal reentry in violation of 8 U.S.C. § 1326 in a case in which the defendant collaterally attacked the underlying removal order.

The panel rejected the defendant's arguments that his failure to exhaust his administrative remedies was excused. The panel held that under the modified categorical approach, the defendant's predicate conviction for possession of methamphetamine for sale in violation of Cal. Health & Safety Code § 11378 qualifies as a drug trafficking offense under 8 U.S.C. § 1101(a)(43)(B), where the change of plea form, the minute entry of the plea colloquy, and the abstract of judgment all show that the defendant pleaded guilty to the § 11378 count charging possession for sale of methamphetamine. The panel held that the defendant was not denied his due process right to counsel during removal proceedings and that because he has not demonstrated a plausible claim for relief from the removal order, he was not prejudiced by any such denial.

The panel held that the defendant's § 11378 conviction is categorically a drug trafficking offense supporting a 16-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A), and that the conviction would also qualify for the enhancement under the modified categorical approach.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the district court's imposition of supervised release is substantively reasonable, notwithstanding U.S.S.G. § 5D1.1(c) (2011) (providing that supervised release should not "ordinarily" be imposed in a case in which the defendant is a deportable alien who likely will be deported after imprisonment), where the district court gave a specific and particularized explanation that supervised release would provide an added measure of deterrence and protection based on the facts of this case.

## COUNSEL

Charlotte E. Kaiser (argued), Bruce R. Castetter, United States Attorneys Office, San Diego, California for Plaintiff-Appellee.

James Fife, Federal Defenders of San Diego, San Diego, California for Defendant-Appellant.

## OPINION

ZOUHARY, District Judge:

### INTRODUCTION

Jorge Valdavinos-Torres ("Valdavinos") was ordered removed in 2008 after immigration court proceedings. Sometime after his removal, Valdavinos returned to the United States without permission, and in 2010 was arrested and convicted for possession of methamphetamine in violation of California law. After serving a short jail sentence, Valdavinos was turned over to immigration officials

and eventually indicted for illegal re-entry in violation of 8 U.S.C. § 1326. Following a conditional guilty plea, Valdavinos was convicted and sentenced to 46 months in custody and two years of supervised release.

Valdavinos appeals his conviction and sentence, claiming the district court erred in denying his motion to dismiss the indictment. Valdavinos also argues the record failed to prove that the drug trafficking conviction leading to his 2008 deportation was a controlled substance offense qualifying for a sixteen-level sentencing enhancement. Lastly, Valdavinos challenges the district court's imposition of supervised release.

This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and for the reasons set forth below, we **AFFIRM** the judgment of the district court.

### BACKGROUND

**Procedural Background**

An indictment filed on April 6, 2011 charged Valdavinos with a single count under 8 U.S.C. §§ 1326(a) and (b) for being a deported alien in the United States. In early June 2011, Valdavinos filed a motion to dismiss the indictment, arguing his previous deportation was invalid under 8 U.S.C. § 1326(d). The motion was fully briefed, and the district court held a hearing on June 24, 2011, which culminated in the denial of Valdavinos' motion. The district court confirmed its ruling in an order dated June 27, 2011.

On July 14, 2011, Valdavinos entered a conditional guilty plea to the charged offense, reserving the right to challenge

the denial of his motion to dismiss, as well as his sentence. A pre-sentence investigation report was filed, and the Government filed a sentencing summary chart. Valdavinos also filed a sentencing summary chart, which asserted his prior conviction for possession of methamphetamine in violation of California law was not a deportable "aggravated felony" under 8 U.S.C. § 1101(a)(43)(M).

On December 9, 2011, the district court sentenced Valdavinos to 46 months in prison, followed by two years of supervised release. The court entered its final judgment on December 14, 2011, and Valdavinos filed his notice of appeal that same day.

**Factual Background**

On October 20, 2010, the San Diego Sheriff's Department arrested Valdavinos, an adult citizen of Mexico, in Vista, California, for possession of methamphetamine in violation of Cal. Health & Safety Code § 11377(a). Valdavinos was booked into the county jail immediately following his arrest. While there, Immigration and Customs Enforcement ("ICE") agents determined Valdavinos was a deported alien who had not applied for permission to re-enter the United States. An immigration detainer was lodged that same day, meaning ICE officials intended to seek future custody of Valdavinos. Valdavinos was eventually convicted of the Section 11377(a) offense, and on November 2, 2010, was sentenced to 180 days in jail.

In mid-February 2011, Valdavinos was released from jail and transferred to ICE custody. A records check confirmed Valdavinos was a deported alien who had not applied for re-entry. Specifically, Valdavinos had been ordered removed

from the United States by a January 29, 2008 administrative order, and was physically removed that same day through the San Ysidro, California Port of Entry. On April 6, 2011, a grand jury indicted Valdavinos for being a deported alien in the United States in violation of 8 U.S.C. §§ 1326(a) and (b).

On June 8, 2011, Valdavinos moved to dismiss the one-count indictment under 8 U.S.C. § 1326(d) on the grounds that his 2008 deportation was invalid. The district court held a hearing on the motion, during which the parties focused on whether the drug conviction that led to Valdavinos' 2008 deportation was in fact a deportable offense. The dispute centered on Valdavinos' September 2007 conviction for possession of methamphetamine for sale in violation of Cal. Health & Safety Code § 11378. According to the Government, that conviction was a controlled substance offense qualifying as an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(B), which includes drug trafficking crimes as aggravated felonies. Therefore, the Government argued Valdavinos was properly deported because an alien "convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii).

Not all convictions under Section 11378 qualify as drug trafficking offenses because, as this Court recognized in *Ruiz-Vidal v. Gonzales*, 473 F.3d 1072 (9th Cir. 2007), not all substances punishable under California law are defined as controlled substances under federal law. Because the plea form for his 2007 conviction does not state he pled guilty specifically to trafficking a controlled substance as defined by federal law, Valdavinos argued his conviction lacked a factual basis showing it was a drug trafficking offense and thus an "aggravated felony." He based his argument on *People v. West*, 477 P.2d 409 (Cal. 1970), which held a guilty

plea to an offense does not necessarily mean the defendant admits the facts alleged in the indictment.

Rebutting Valdavinos' position, the Government noted he pled guilty specifically to Count Two of the Complaint, which unequivocally identified the controlled substance at issue as methamphetamine. Methamphetamine, of course, qualifies as a controlled substance under federal law. *See* 21 U.S.C. §§ 802(6), 812(a)(3) sched. III. Therefore, although the factual basis in Valdavinos' plea form merely stated "Peo. v. West," when read in conjunction with the Complaint, it became clear the controlled substance at issue was methamphetamine. The district court agreed with the Government, holding Valdavinos could not show prejudice as a result of his removal.

Moreover, the district court, relying on the removal documents showing Valdavinos was advised that he would be deported and given the opportunity for counsel, determined he did not suffer a due process violation as a result of his removal. At the conclusion of the hearing, Valdavinos' attorney requested the district court issue a written order, which it did on June 27, 2011.

On July 14, 2011, Valdavinos entered a conditional guilty plea to being a deported alien, but reserved the right to challenge the denial of his motion to dismiss and his sentence. The district court held Valdavinos' sentencing hearing on December 9, 2011, during which it determined his total adjusted offense level was 21. When combined with his criminal history category V, the offense resulted in a Sentencing Guidelines range of 70 to 87 months imprisonment. Specifically, the district court calculated the base offense level as 8 under U.S.S.G. § 2L1.2(a), and then

applied a sixteen-level enhancement for his 2007 Section 11378 offense under U.S.S.G. § 2L1.2(b)(1)(A), as well as a three-level adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(b).  The Presentence Investigation Report ("PSR") recommended a downward variance to 60 months in light of Valdavinos' supportive family, positive work history, and signs of substance abuse.  The PSR also recommended three years of supervised release.

The district court heard arguments from both parties regarding sentencing recommendations.  Valdavinos agreed to his criminal history score, but argued the court should apply only a four-level enhancement for his 2007 Section 11378 conviction under U.S.S.G. § 2L1.2(b)(1)(D), which would result in a sentencing range of 21 to 27 months.  Given the circumstances of his offense and his background, Valdavinos requested an 18-month sentence.  Valdavinos addressed the court, apologizing for breaking the law, and indicating he did so only to be with his children and support his mother.  Valdavinos told the district court he had not realized the harsh punishment for returning to the United States, where he had first come at age twelve.

The Government requested a 70-month sentence, noting that when Valdavinos was arrested for his current offense, he was driving with methamphetamine in his possession, and had a record for trafficking and using while driving.  The district court adopted the PSR's calculations and reasoning, including the need for a variance. The court recognized Valdavinos' criminal history and that his involvement with drugs showed he was "a danger to the community."  The district court, however, noted Valdavinos' record was not the "worst" it had seen, and also acknowledged his family responsibilities.

The court ultimately sentenced Valdavinos to 46 months in prison.  In addition, the court imposed a two-year term of supervised release, stating

> Because you have family here and to make sure that you understood we mean business in this regard, I am going to impose supervised release, finding the added deterrent value with your family members here makes it a case that is contrary to the recommendations of the advisory Guidelines.

Valdavinos now claims his conviction must be reversed due to the court's erroneous ruling on the motion to dismiss the indictment under Section 1326(d).  Valdavinos also argues the record failed to prove his prior conviction was a controlled substance offense qualifying for a U.S.S.G. § 2L1.2(b)(1)(A) enhancement.  Valdavinos lastly challenges the district court's imposition of supervised release, arguing it was excessive and contrary to the Sentencing Commission's renouncement of supervised release in ordinary illegal re-entry cases.

## DISCUSSION

## The District Court Properly Denied Valdavinos' Motion to Dismiss the Indictment

### Standard of Review

This Court reviews *de novo* "the district court's denial of a motion to dismiss an indictment under 8 U.S.C. § 1326 when the motion is based on an alleged deprivation of due process in the underlying removal proceedings."  *United*

*States v. Villavicencio-Burrel*, 608 F.3d 556, 559 (9th Cir. 2010) (citing *United States v. Moriel-Luna*, 585 F.3d 1191, 1196 (9th Cir. 2009)). The district court's factual findings are reviewed for clear error. *United States v. Ramos*, 623 F.3d 672, 680 (9th Cir. 2010). Furthermore, to prevail in a collateral attack on the underlying removal order in a motion to dismiss, Valdavinos "must, as a threshold matter, show that he exhausted his administrative remedies." *Villavicencio-Burrel*, 608 F.3d at 559 (citing 8 U.S.C. § 1326(d)(1)); *see also United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004).

### Valdavinos Failed to Comply With Section 1326(d)'s Exhaustion Requirement

Because Valdavinos' 2008 removal order serves as a predicate element of his illegal re-entry offense under Section 1326, Valdavinos may collaterally attack the removal order under the Due Process Clause. *See United States v. Reyes-Bonilla*, 671 F.3d 1036, 1042–43 (9th Cir. 2012); *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004). To succeed in a such a challenge, however, Valdavinos must demonstrate: (1) he exhausted any administrative remedies that may have been available to seek relief; (2) the deportation proceedings from which the order issued improperly denied him the opportunity for judicial review; and (3) the order was fundamentally unfair. 8 U.S.C. § 1326(d); *see Reyes-Bonilla*, 671 F.3d at 1042; *United States v. Becerril-Lopez*, 541 F.3d 881, 885 (9th Cir. 2008). An underlying removal order is "fundamentally unfair" if a defendant's due process rights were violated by defects in his deportation process, and he suffered prejudice as a result. *Reyes-Bonilla*, 671 F.3d at 1043; *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004).

Moreover, an alien is barred from collaterally attacking his removal order as a defense to a Section 1326 charge "if he validly waived the right to appeal that order during the deportation proceedings." *United States v. Muro-Inclan*, 249 F.3d 1180, 1182 (9th Cir. 2001) (internal citations omitted). This exhaustion requirement, however, cannot bar collateral review if Valdavinos' waiver of his right to appeal "did not comport with due process" – that is, his waiver was not "considered and intelligent." *Id.* at 1183; *see also United States v. Mendoza-Lopez*, 481 U.S. 828, 839–40 (1987) (holding due process requires judicial review of underlying deportation proceedings when waiver of the right to appeal was not considered or intelligent).

Valdavinos concedes he did not exhaust his administrative remedies, but urges this Court to excuse his non-exhaustion because he "was denied due process by being removed without a proper, legal basis, by a denial of the right to counsel, and by failure to offer him the opportunity to apply for available relief." These arguments fail.

### Valdavinos' Section 11378 Conviction Constitutes an "Aggravated Felony" Under the Modified Categorical Approach

First, Valdavinos was charged with a proper legal basis for deportation. According to Valdavinos, his due process rights were violated and he suffered prejudice because his 2007 conviction for possession of methamphetamine for sale under Section 11378 does not constitute a drug trafficking offense under 8 U.S.C. § 1101(a)(43)(B), which classifies trafficking offenses as deportable "aggravated felonies." Valdavinos argues that, because he was not an aggravated

felon, he had a "plausible ground" for relief from removal by way of voluntary removal under 8 U.S.C. § 1229c.

In determining whether an offense qualifies as an aggravated felony, this Court looks to the statute under which the defendant was convicted and compares its elements to the relevant definition of an aggravated felony under federal law, which in this case, is found in Section 1101(a)(43)(B). *See Taylor v. United States*, 495 U.S. 575, 602 (1990). This Court's first task under *Taylor* is to make a categorical comparison. Under the "categorical approach," Valdavinos' 2007 drug conviction qualifies as an aggravated felony if the "full range of conduct covered by [Section 11378] falls within the meaning of" that term. *See United States v. Vidal*, 504 F.3d 1072, 1076 (9th Cir. 2007) (en banc) (internal citations omitted). In other words, if Section 11378 is broader than the generic definition, then it is unsuitable for federal use because there is no assurance it relates to conduct Congress intended to punish. *See Taylor*, 495 U.S. at 599–602. To make this determination, this Court looks at "the least egregious end of [Section 11378]'s range of conduct" to determine its categorical scope. *United States v. Laurico-Yeno*, 590 F.3d 818, 821 (9th Cir. 2010).

Making that determination here is an easy task. Indeed, this Court has held repeatedly that California's controlled substances schedules are broader than their federal counterparts. *See, e.g.*, *Ruiz-Vidal v. Gonzales*, 473 F.3d 1072, 1078 (9th Cir. 2007) (holding California law punishes some substances not included in the Controlled Substances Act, 21 U.S.C. § 802); *Cabantac v. Holder*, — F.3d —, No. 09-71336, 2012 WL 3608532, at *1 (9th Cir. Aug. 23, 2012) (same). Therefore, Valdavinos correctly asserts that his prior conviction under Section 11378 cannot be a categorical

controlled substance or drug trafficking offense under federal law.

The inquiry does not end here, however. When a criminal offense does not satisfy *Taylor*'s categorical approach because it criminalizes both conduct that does and does not qualify as an aggravated felony, the court must turn to the so-called "modified categorical approach." *See Ye v. INS*, 214 F.3d 1128, 1133 (9th Cir. 2000); *Vidal*, 504 F.3d at 1077. Under the modified approach, this Court conducts a limited examination of documents in the conviction record to determine if there is sufficient evidence to conclude Valdavinos was convicted of the elements of the generically defined crime, even though Section 11378 is facially over-inclusive. *See id.* This is where Valdavinos falls short.

Valdavinos contends his 2007 conviction cannot support the finding that he was convicted of an aggravated felony because, under *People v. West*, 3 Cal. 3d 595 (1970), a guilty plea to an offense does not necessarily mean the defendant admitted all facts alleged in the indictment. However, it is well-established in this Circuit that, in undertaking an analysis of the record of conviction, this Court "may consider the charging documents *in conjunction* with the plea agreement, the transcript of a plea proceeding, or the judgment to determine whether the defendant pled guilty to the elements of the generic crime." *Ruiz-Vidal*, 473 F.3d at 1078 (citing *United States v. Corona-Sanchez*, 291 F.3d 1201, 1211 (9th Cir. 2002)) (emphasis added); *see also Shepard v. United States*, 544 U.S. 13, 20–26 (2005). Moreover, this Court recently acknowledged that courts may consider the facts alleged in a specific count of a complaint where an abstract of judgment or even a minute entry specifies that a defendant pled guilty to that particular count. *See Cabantac*,

2012 WL 3608532, at \*2; *see also United States v. Snellenberger*, 548 F.3d 699, 701–02 (9th Cir. 2008) (en banc) (reading a minute order in tandem with a complaint to conclude the defendant's conduct was a crime of violence).

Therefore, although a charging paper alone is never sufficient, *United States v. Parker*, 5 F.3d 1322, 1327 (9th Cir. 1993), a charging paper may be considered in combination with other documents in the record to determine whether Valdavinos pled guilty to an aggravated felony. *See Ruiz-Vidal*, 473 F.3d at 1078 (citing *Corona-Sanchez*, 291 F.3d at 1211). In this case, the record leaves no doubt Valdavinos pled guilty to possession of methamphetamine for sale in violation of Section 11378.

The record of conviction for Valdavinos' 2007 drug offense contains four documents: (1) Felony Complaint; (2) change of plea form; (3) minute entry of the plea colloquy; and (4) abstract of judgment. Count Two of the Complaint unequivocally lists the controlled substance underlying Valdavinos' Section 11378 conviction as methamphetamine:

> On or about April 23, 2007 . . . the crime of POSSESSION FOR SALE – 1 OZ OR MORE, in violation of HEALTH AND SAFETY CODE SECTION 11378, a felony was committed by . . . Jorge [Valdavinos]-Torres . . . who did unlawfully possess for purpose of sale a controlled substance, to wit, Methamphetamine.

The change of plea form indicates Valdavinos pled guilty to Count Two, which, as just discussed, states he possessed methamphetamine for sale in violation of Section 11378.

These two documents in conjunction with one another suffice to establish the substance at issue was methamphetamine. The abstract of judgment and the minute entry of Valdavinos' plea colloquy reinforce this conclusion. Both of those documents, like the plea form, indicate Valdavinos pled guilty to Count Two of the Complaint. In short, the district court did not err in concluding the record documents in this case showed Valdavinos "understood that he was pleading guilty to count two of the Complaint."

Valdavinos' citations to *Vidal* and *Ruiz-Vidal* do not compel a different result. In those cases, we held the charging documents, along with the other documents at issue, were insufficient to establish that the prior convictions satisfied the generically defined crimes. Specifically, the defendant in *Vidal* was charged with "willfully and unlawfully driv[ing] and tak[ing] a vehicle," but the written plea and waiver of rights form showed he pled guilty only to "driving a stolen vehicle." 504 F.3d at 1075. We concluded the record in that case "fail[ed] to establish the factual predicate for [the defendant's] plea of guilty," because it did not contain a recitation of the factual basis for the defendant's plea, a plea hearing transcript, or a copy of the judgment of conviction. *Id.* at 1087.

In *Vidal*, we further emphasized "[w]hen, as here, the statute of conviction is overly inclusive, 'without a charging document that narrows the charge to generic limits, the only certainty of a generic finding lies . . . in the defendant's own admissions or accepted findings of fact confirming the factual basis for a valid plea.'" *Id.* at 1088–89 (quoting *Shepard*, 544 U.S. at 25). Simply put, we did not have a record upon which a determination could be made whether the defendant had admitted facts establishing the requisite factual predicate

to support finding the conviction was an aggravated felony. That is in direct contrast to the case at hand, where the factual basis for the underlying conviction to which Valdavinos pled guilty unequivocally establishes the controlled substance at issue was methamphetamine.

Notably, the *Vidal* court relied on *United States v. Snellenberger*, 493 F.3d 1015 (9th Cir. 2007), for the proposition that a minute order, even when read in conjunction with the complaint, was insufficient to establish the defendant's conviction was for a crime of violence. *Vidal*, 504 F.3d at 1087. That case, however, was overturned by an en banc panel, which concluded "district courts may rely on clerk minute orders . . . in applying the modified categorical approach." *See Snellenberger*, 548 F.3d at 701–02. The en banc *Snellenberger* decision was abrogated recently by another en banc panel only to the extent that *Snellenberger* held a guilty plea to a *conjunctively* phrased information constitutes an admission of all allegations contained therein. *See Young v. Holder*, — F.3d —, No. 11-41304, 2012 WL 4074668, at *6–8 (9th Cir. Sept. 17, 2012) ("[W]hen either 'A' or 'B' could support a conviction, a defendant who pleads guilty to a charging document alleging 'A and B' admits only 'A' or 'B.'").

Similarly, in *Ruiz-Vidal*, the charging document identified the drug at issue as methamphetamine, but the defendant did not plead guilty to either of the crimes charged in that document. 473 F.3d at 1079. Instead, the defendant pled guilty to violating Cal. Health & Safety Code § 11377(a). *Id.* Because the record contained *no* plea agreement or colloquy that revealed the facts underlying the plea, a panel of this Court concluded "there is simply no way for us to connect the references to methamphetamine in the charging document

with the conviction." *Id.*; *see also Martinez-Perez v. Gonzales*, 417 F.3d 1022, 1029 (9th Cir. 2005) (holding facts in the information could not establish the defendant committed an aggravated felony where defendant pled guilty to a different offense from the one charged in the information).

Here, there is a way to "connect the references" as required by *Ruiz-Vidal* and there is no need to "speculate as to the nature of the substance." 473 F.3d at 1079. Indeed, in contrast to the defendants in *Vidal* and *Ruiz-Vidal*, three different records confirm that Valdavinos was pleading guilty to possession for sale of methamphetamine. In addition, however, Valdavinos argues *Young* is dispositive here because it adopted the maxim "allegations not necessary to be proved for a conviction . . . are not admitted by a plea." 2012 WL 4074668, at *7 (citation omitted). But *Young* does not affect the outcome in this case, as the Complaint is not conjunctively phrased. Further, *Young* applies the modified categorical approach, and notes that the "record is inconclusive under the modified categorical approach" when the record consists "only of a charging document that includes several theories of the crime, at least one of which would *not* qualify as a predicate conviction." *Id.* at *8. As noted above, the record here consists of more than just the charging document – three different records make clear Valdavinos was pleading guilty to possession for sale of methamphetamine. Therefore, his Section 11378 offense qualifies as a deportable drug trafficking crime under Section 1101(a)(43)(B). *See* 8 U.S.C. § 1227(a)(2)(A)(iii). Accordingly, Valdavinos was charged with a proper legal basis for deportation.

**Valdavinos Was Not Denied the Right to Counsel**

While the lion's share of Valdavinos' brief is devoted to his argument regarding the modified categorical approach and his Section 11378 conviction, only a footnote is devoted to his argument that his due process rights were violated by the denial of his right to counsel during removal proceedings.

"Although there is no Sixth Amendment right to counsel in an immigration hearing, Congress has recognized it among the rights stemming from the Fifth Amendment guarantee of due process that adhere to individuals that are the subject of removal proceedings." *Reyes-Bonilla*, 671 F.3d at 1045 (quoting *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004)). In addition to the Due Process Clause, the right to counsel in immigration proceedings is also secured by statute. *See* 8 U.S.C. § 1228(b)(4)(B) ("[T]he alien shall have the privilege of being represented (at no expense to the government) by such counsel, authorized to practice in such proceedings, as the alien shall choose."); 8 C.F.R. § 238.1(b)(2)(i) ("The [Notice of Intent] shall advise that the alien: has the privilege of being represented . . . in removal proceedings."); *see also* 8 C.F.R. § 238.1(b)(2)(iv) (requiring ICE to provide aliens facing expedited removal "a list of available free legal services programs").

In this case, Valdavinos admits he was informed he had the right to legal counsel at his own expense, but contends his waiver was not "knowing and intelligent" because he waived his right five days *before* he received "the document actually explaining the right to representation, as well as the charges and the intended method of removal." According to Valdavinos, the denial of counsel was prejudicial because an attorney could have applied *Ruiz-Vidal* to defeat the basis for

removal during his proceedings.  This argument fails for two reasons.

First, there is no evidence that Valdavinos requested and was denied counsel *after* being notified of the basis for his removal.  Indeed, the record clearly indicates that Valdavinos chose not to contest his deportation and did not want an attorney.  Nothing indicates Valdavinos later revoked his waiver and requested counsel before his proceedings. Second, even if Valdavinos established his removal proceedings violated his due process right to counsel, he cannot establish the prejudice required for a collateral attack under Section 1326(d)(3).

To establish the requisite prejudice, Valdavinos needs to "show that there were 'plausible grounds' on which he could have been granted relief from removal in [2008]." *Reyes-Bonilla*, 671 F.3d at 1049 (citing *United States v. Ramos*, 623 F.3d 672, 684 (9th Cir. 2010)).  A plausible claim to relief "requires some evidentiary basis on which relief could have been granted, not merely a showing that some form of immigration relief was theoretically possible." *Id.* at 1049–50.  Because his prior conviction under Section 11378 was for an aggravated felony, Valdavinos' ability to obtain immigration relief in 2008 was severely limited. *See generally United States v. Amador-Leal*, 276 F.3d 511, 516 (9th Cir. 2002) (explaining it is "virtually certain that an aggravated felon will be removed" in light of the Antiterrorism and Effective Death Penalty Act of 1996 and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996).  Indeed, 8 U.S.C. § 1182 clearly instructs that aliens convicted of aggravated felonies, such as Valdavinos, are ineligible for discretionary deportation relief.  Moreover, Valdavinos' plea for relief under the voluntary departure

statute is misguided, as that statute also excludes aliens who have committed an aggravated felony. *See* 8 U.S.C. § 1229c(a)(1). In fact, due to his status as an aggravated felon, the only form of immigration relief available to Valdavinos in 2008 was a deferral of removal under the Convention Against Torture ("CAT"). *See* 8 C.F.R. § 1208.17(a); *see also Reyes-Bonilla*, 671 F.3d at 1050. However, there is neither evidence nor an allegation that CAT applies in this case.

Accordingly, Valdavinos has not demonstrated a plausible claim to relief from his 2008 removal order, and therefore was not prejudiced by any alleged violation of his due process right to counsel during removal proceedings.

**Valdavinos Had No Available Relief**

Valdavinos' third alleged violation of his due process rights fares no better. According to Valdavinos, he was deprived of an opportunity to seek deportation relief. However, as discussed above, Valdavinos had no plausible claim to relief from deportation in 2008 and, as such, this argument fails.

Because Valdavinos did not comply with the exhaustion requirement under Section 1326(d)(1), he may not collaterally attack his removal order.

**The District Court Properly Determined Valdavinos'
Section 11378 Conviction Was a Drug Trafficking Offense
Under Sentencing Guidelines Section 2L1.2(b)(1)(A)**

### Standard of Review

Whether Valdavinos' 2007 conviction constitutes a drug
trafficking offense for purposes of U.S.S.G. § 2L1.2(b)(1)(A)
is a question of law this Court reviews *de novo*. *See Vidal*,
504 F.3d at 1076; *United States v. Arellano-Torres*, 303 F.3d
1173, 1176 (9th Cir. 2002); *see also United States v.
Valle-Montalbo*, 474 F.3d 1197, 1199 (9th Cir. 2007)
(holding the standard of review for a sentence enhancement
under Section 2L1.2 is *de novo*). The Government bears the
burden of proving the sixteen-level enhancement by clear and
convincing evidence. *United States v. Bonilla-Montenegro*,
331 F.3d 1047, 1050 (9th Cir. 2003).

### Valdavinos' 2007 Conviction Under Section 11378 is Categorically a Drug Trafficking Offense Under Section 2L1.2(b)(1)(A)

As previously discussed, under the categorical approach
set forth in *Taylor*, courts "look only to the fact of conviction
and the statutory definition of [a] prior offense" to determine
whether that prior offense can be used for a sentencing
enhancement under the federal Guidelines. *Valle-Montalbo*,
474 F.3d at 1200. If the state "statute criminalizes conduct
that would not constitute a drug trafficking offense under
federal sentencing law," then a prior conviction under that
statute "does not categorically qualify as a basis for
enhancing [a] defendant's sentence." *Id.* (quoting *United
States v. Morales-Perez*, 467 F.3d 1219, 1221 (9th Cir.
2006)).

Application note 1(B)(iv) to Guidelines Section 2L1.2 expressly defines a "drug trafficking offense" as "an offense under federal, state, or local law that prohibits . . . the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." As the record shows, Valdavinos was convicted in 2007 for possession of methamphetamine for sale in violation of Section 11378 of the California Health & Safety Code. That section states, in relevant part: "[E]very person who possesses for sale any controlled substance which is . . . specified in subdivisions (d), (e), or (f) . . . of Section 11055, shall be punished by imprisonment in the state prison." Section 11055(d)(2) in turn lists methamphetamine as a controlled substance. Therefore, as the court in *Valle-Montalbo* held, "[i]t follows that under the *Taylor* categorical approach, [a] prior conviction for violating Health & Safety Code § 11378 is a drug trafficking offense under § 2L1.2." 474 F.3d at 1201. Accordingly, the district court properly applied the sixteen-level enhancement to Valdavinos' sentence for illegal re-entry.

**Valdavinos' 2007 Conviction Under Section 11378 is a Drug Trafficking Offense for Section 2L1.2(b)(1)(A) Purposes Under the Modified Categorical Approach**

Even if Valdavinos' Section 11378 conviction did not satisfy *Taylor*'s categorical approach, it would qualify as a "drug trafficking offense" for Section 2L1.2 purposes under the modified categorical approach. As discussed in more detail above, Count Two of Valdavinos' Complaint indicates he "unlawfully possessed for purpose of sale a controlled substance, to wit, Methamphetamine." Valdavinos' plea form, abstract of judgment, and plea colloquy minute entry all show he pled guilty specifically to that Count. Taken

together, these documents indicate, "with reasonable certainty," that Valdavinos was convicted of possession for sale of methamphetamine in violation of Section 11378. *See Snellenberger*, 548 F.3d at 701 (applying a "reasonable certainty" standard under the modified categorical approach). With the exception of the minute entry, Count Two and Section 11378 are referenced in all documents in Valdavinos' record of conviction, providing a sufficient link for this Court to conclude that he pled guilty to possessing methamphetamine for sale, which is referenced in the Complaint. Methamphetamine is one of the drugs listed on the federal controlled substances schedules, and therefore, Valdavinos' prior California conviction is a "drug trafficking offense" as defined under Section 2L1.2(b)(1)(A). *See* 21 U.S.C. §§ 802(6), 812(a)(3) sched. III.

## The District Court's Imposition of Supervised Release Was Reasonable

### Standard of Review

This Court's review of a sentencing decision is limited to determining whether that decision was "reasonable." *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1053 (9th Cir. 2009) (citing *Gall v. United States*, 552 U.S. 38, 50–51 (2007)). In conducting this inquiry, the district court's decision is reviewed for abuse of discretion. *Id.* "[O]nly a procedurally erroneous or substantively unreasonable sentence will be set aside." *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc).

In reviewing a sentence, this Court first considers "whether the district court committed significant procedural error," including an incorrect Guidelines determination. *Id.*

(citing *Gall*, 552 U.S. at 51). Valdavinos, however, does not assert his sentence is procedurally erroneous. This Court therefore must proceed to the second consideration: whether, in light of the 18 U.S.C. § 3553(a) factors, "the district court abused its discretion by imposing a substantively unreasonable sentence." *United States v. Crowe*, 563 F.3d 969, 977 (9th Cir. 2009). The question here is whether the district court's imposition of supervised release was unreasonable.

### The District Court Reasonably Imposed Supervised Release as Additional Deterrence

Under 18 U.S.C. § 3553(a)(4)(A)(ii), the district court was required to apply the Guidelines version in effect on December 9, 2011 – the date of Valdavinos' sentencing. Effective November 1, 2011, Guidelines Section 5D1.1 was amended to add Subsection (c), which states that courts "ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment." However, Application note 5 to Section 5D1.1 specifically instructs that a court should "consider imposing a term of supervised release on [a deportable alien] if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of [the] particular case."

On appeal, Valdavinos argues that because the Guidelines state supervised release should not "ordinarily" be imposed, the district court's decision to impose two years of supervised release was substantively unreasonable. The Fifth Circuit recently addressed and rejected a similar argument, and we adopt that reasoning in rejecting the claim in this case. *See*

*United States v. Dominguez-Alvarado*, — F.3d —, No. 11-41304, 2012 WL 3985136, at *3 (5th Cir. Sept. 12, 2012).

The court in *Dominguez-Alvarado* emphasized the importance of giving meaning to all words in Section 5D1.1 to ensure none are rendered superfluous. *Id.* at *3. In doing so, the court interpreted the Guidelines' use of the word "ordinarily" as advising courts that for most deportable aliens, imposing a term of supervised release is unnecessary as the deterrent and protective effect of supervised release is served by the possibility of a future prosecution for illegal re-entry, while still leaving the court discretion "of imposing supervised release in uncommon cases where added deterrence and protection are needed." *Id.* In other words, the court held the word "ordinarily" in Section 5D1.1 is not mandatory. *Id.*

The court cautioned that "supervised release should not be imposed absent a determination that supervised release would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case." *Id.* Although the district court in *Dominguez-Alvarado* did not focus on Section 5D1.1 in imposing a three-year term of supervised release, the Fifth Circuit affirmed because the district court stated, "I gave the sentence after looking at the factors in 3553(a), to deter future criminal conduct, his particular background and characteristics, which apparently do not make him a welcome visitor in this country." *Id.* According to the court, such "particularized explanation and concern [] justif[ied] imposition of a term of supervised release." *Id.*

As in *Dominguez-Alvarado*, the district court below gave a specific and particularized explanation that supervised

release would provide an added measure of deterrence and protection based on the facts of Valdavinos' case. Specifically, the district court found:

> Because you have family here and to make sure that you understood we mean business in this regard, I am going to impose supervised release, finding the added deterrent value with your family members here makes it a case that is contrary to the recommendations of the advisory Guidelines.

Valdavinos' family ties to the United States provide a legitimate basis for the district court's findings. Indeed, as Valdavinos admits, his sole reason for returning to the United States was to be with his children and sick mother. In his brief, Valdavinos asserts he has "extensive, close, family ties to the country," and argues such ties supported a plausible ground for relief from removal in 2008. Valdavinos now attempts to argue these same ties are "too thin" and do not "rationally" support the need for supervised release.

Further, the district court varied from the Guidelines and imposed a sentence of imprisonment 24 months below the low end of the advisory Guidelines range. While the court could have imposed a higher sentence as additional deterrence, it chose to create additional deterrence by imposing a two-year supervised release term. That was not an abuse of discretion.

On a final note, the district court's imposition of supervised release was authorized by 18 U.S.C. § 3583(b)(2), which permits a term of up to three years in this case. The two-year term is also consistent with Guidelines Sections

5D1.1(a) and 5D1.2(a)(2).  Therefore, no departure analysis is triggered.

In light of the district court's particularized remarks at sentencing, we hold Valdavinos' two-year term of supervised release is substantively reasonable.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.