FILED

JAN 29 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>WALTER J. REYES, AKA Walter Joel Reyes-Trochez,<br><br>Defendant-Appellant. | No. 19-50207<br><br>D.C. No.<br>3:19-cr-00419-LAB-1<br><br>ORDER AMENDING MEMORANDUM DISPOSITION and DENYING PETITION FOR REHEARING |

Before:  BERZON and COLLINS, Circuit Judges, and KATZMANN,** Judge.

The panel has voted unanimously to amend the memorandum disposition filed in this case on December 4, 2020 by replacing the first full paragraph on page 2 with the following revised paragraph:

1.     **Sufficiency of the Evidence**.  A prior conviction under 8 U.S.C. § 1325 is a necessary predicate offense for a conviction for felony attempted illegal re-entry under 8 U.S.C. § 1325.  Reyes had such a conviction from the District of Arizona in 2012.  To prove that prior conviction, the Government introduced into evidence heavily

---

**      The Honorable Gary S. Katzmann, Judge for the United States Court of International Trade, sitting by designation.

redacted versions of certified copies of the docket sheet and plea agreement from the 2012 District of Arizona case.

The amended memorandum disposition, together with Judge Collins's partial dissent (which is unaffected by this amendment), is attached hereto.

With this amendment, the panel votes to deny the petition for rehearing.

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 29 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>WALTER J. REYES, AKA Walter Joel Reyes-Trochez,<br><br>Defendant-Appellant. | No.  19-50207<br><br>D.C. No.<br>3:19-cr-00419-LAB-1<br><br>AMENDED MEMORANDUM* |

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, Chief District Judge, Presiding

Argued and Submitted July 7, 2020
Pasadena, California

Before:  BERZON and COLLINS, Circuit Judges, and KATZMANN,** Judge.

Partial Concurrence and Partial Dissent by Judge COLLINS

Following a jury trial, Defendant Walter J. Reyes appeals his conviction and

sentence for illegal entry into the United States, in violation of 8 U.S.C. § 1325.  We

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Gary S. Katzmann, Judge for the United States Court of International Trade, sitting by designation.

affirm the conviction but vacate the imposition of supervised release and remand for resentencing.

1. **Sufficiency of the Evidence**.  A prior conviction under 8 U.S.C. § 1325 is a necessary predicate offense for a conviction for felony attempted illegal re-entry under 8 U.S.C. § 1325.  Reyes had such a conviction from the District of Arizona in 2012.  To prove that prior conviction, the Government introduced into evidence heavily redacted versions of certified copies of the docket sheet and plea agreement from the 2012 District of Arizona case.

The docket sheet includes the following: (1) under the "Complaints" subheading at the top of the docket sheet, "8:1325 Illegal Entry" is listed; (2) the first unnumbered docket entry records the arrest of Walter Joel Reyes-Trochez; (3) after several redacted entries, the fourth numbered entry notes Reyes' plea agreement; and (4) the fifth numbered docket entry records "Judgment and Commitment Issued" for Reyes.  The plea agreement includes the same case number as the docket, reflects that the Government and Reyes entered a plea agreement, and that Reyes, defense counsel, and the Government dated and signed it.  The substance of the four-page plea agreement was entirely redacted; it includes no mention of 8 U.S.C. § 1325 or illegal entry.

The Government presented evidence to tie Reyes to the "Walter Reyes" in the 2012 case, including Reyes' fingerprints and his signature from his 2018 arrest, a

2012 fingerprint card from his A-file with his name on it, and expert testimony matching the fingerprints.

At the close of the Government's case-in-chief, Reyes moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 (hereinafter, "Rule 29") on all elements of the charge. The court denied the Rule 29 motion.

The question on appeal of the denial of a Rule 29 motion "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Riggins*, 40 F.3d 1055, 1057 (9th Cir. 1994) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Here, the answer is yes.

The only charge listed on the docket was 8 U.S.C. § 1325, a plea agreement was entered, and a judgment was reached, with only five docket entries in total. The record reflects that Reyes was subsequently removed from the United States. Viewing just this document, one could conclude that it is theoretically possible that Reyes pleaded guilty to some completely different charge *and* that the charge information in the docket under "Complaints" was never updated to reflect the actual charge of conviction. But a reasonable jury could properly conclude that, in its view, any such doubt was not reasonable. As we have explained, "mere speculation . . . is not evidence," and "[a] trial is not the place to explore the limits of imaginative

19-50207

musings; it is a place to decide facts based on evidence." *United States v. Castellanos-Garcia*, 270 F.3d 773, 776 (9th Cir. 2001) (internal citations omitted).

The Rule 29 motion was properly denied.

2. **Closing Argument**. Reyes did not object at trial to the portions of the prosecution's closing argument he now challenges, so we review for plain error. *United States v. Alcantara-Castillo*, 788 F.3d 1186, 1190 (9th Cir. 2015). The court "may reverse if: (1) there was error; (2) it was plain; (3) it affected the defendant's substantial rights; and (4) 'viewed in the context of the entire trial, the impropriety seriously affected the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* at 1191 (quoting *United States v. Combs*, 379 F.3d 564, 568 (9th Cir. 2004)).

The prosecutor's statements did not constitute vouching. They were tied to the evidence and neither expressed personal opinion nor placed the prestige of the Government behind a witness through personal assurances of the witness's veracity. *See United States v. Ruiz*, 710 F.3d 1077, 1085–86 (9th Cir. 2013); *cf. United States v. Younger*, 398 F.3d 1179, 1190–91 (9th Cir. 2005). In any event, the arguments did not affect Reyes' substantial rights or the fairness, integrity or public reputation of the proceeding. The court issued jury instructions cautioning the jury not to consider argument by the attorneys as evidence. The prosecutor did not suggest extra-record knowledge, and only one comment directly referred to evidence of a

4                                                                                          19-50207

prior conviction ("On the prior conviction, the proof is overwhelming."). We are unpersuaded by Reyes' claim of reversible error.

3. **Supervised Release**. On appeal, Reyes does not challenge the term of imprisonment but contends that the district court erred in deviating from the Guidelines by imposing supervised release on a removable non-citizen and failing to explain this deviation. We agree.

Because there was no objection below, this court reviews for plain error whether the sentence was procedurally reasonable. *United States v. Hammons*, 558 F.3d 1100, 1103 (9th Cir. 2009); *see also United States v. Christensen*, 732 F.3d 1094, 1101 (9th Cir. 2013).

a. <u>Plain error</u>. Supervised release is intended "to assist individuals in their transition to community life," *United States v. Johnson*, 529 U.S. 53, 59 (2000), and "establish a period of readjustment," *United States v. Murguia-Oliveros*, 421 F.3d 951, 954 (9th Cir. 2005). Because defendants who are removable non-citizens are removed from the country once they complete the custodial portion of the sentence, "their transition to community life" will be on their own, not "assist[ed]." *See Johnson*, 529 U.S. at 59. The primary purpose of supervised release – to assist a defendant back into the community – cannot be fulfilled in cases involving removable non-citizens.

Accordingly, the Guidelines provide that "[t]he court ordinarily should not

impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment." U.S.S.G. § 5D1.1(c). The application note reiterates that "the court ordinarily should not impose a term of supervised release" in the case of a removable non-citizen. *Id.* cmt. n.5. The note continues:

> Unless such a defendant legally returns to the United States, supervised release is unnecessary. If such a defendant illegally returns to the United States, the need to afford adequate deterrence and protect the public ordinarily is adequately served by a new prosecution. The court should, however, consider imposing a term of supervised release on such a defendant if the court determines it would provide an *added* measure of deterrence and protection based on the facts and circumstances of a particular case.

*Id.* (emphasis added). Supervised release, then, is appropriate only in "uncommon cases where added deterrence and protection are needed," whereby the threat of a revocation sentence for illegally returning provides additional deterrence beyond that provided by the threat of a sentence for illegal re-entry in violation of 8 U.S.C. § 1326. *United States v. Valdavinos-Torres*, 704 F.3d 679, 693 (9th Cir. 2012) (quoting *United States v. Dominguez–Alvarado*, 695 F.3d 324, 329 (5th Cir. 2012)). If a case falls into that rare exception, a court must give a "specific and particularized explanation that supervised release would provide an added measure of deterrence and protection based on the facts of [the defendant's] case." *Id.*

The district court's error in imposing supervised release was plain because it contravened *Valdavinos-Torres* and the Guidelines. The district court did not give the explanation *Valdavinos-Torres* requires as to why on the facts of this case the narrow exception to the Guidelines' advice against supervised release for deported non-citizens applies.

The court did explain the terms of release ("Don't come back again, period. Don't come back"), but did not acknowledge the deviation from the Guidelines or state a particularized reason for the supervised release. Although the Government contends that the court's discussion about his concerns over Reyes' immigration record and the failure of previous sentences to deter him were sufficient justification for the one-year term of supervised release, only terms of imprisonment, not supervised release, were referenced in that discussion. "[M]eaningful appellate review" requires an adequate explanation. *Gall v. United States*, 552 U.S. 38, 50 (2007).

The district court plainly erred in failing to explicitly justify its variance from the Guidelines by imposing supervised release. *See Valdavinos-Torres*, 704 F.3d at 693; *Gall*, 552 U.S. at 50.

b. Substantial rights. "To show that the district court's error affected [the defendant's] substantial rights, [the defendant] must demonstrate 'a reasonable probability that [she] would have received a different sentence' if the district court

had not erred." *United States v. Tapia*, 665 F.3d 1059, 1061 (9th Cir. 2011) (internal citations omitted). Here, that standard is met. Reyes' immigration history is not outside of the norm in illegal entry cases, and the district court reduced his sentence of imprisonment from the Guidelines' minimum in the interest of sentencing Reyes like similarly situated individuals. Given that comparison, there is at least a reasonable likelihood that had the court specifically recognized the Guidelines' advice regarding avoiding supervised release for deported non-citizens, it would have treated Reyes' case as "ordinary" and declined to vary upward from the Guidelines by imposing supervised release. Moreover, regarding the defendant's burden to show prejudice, we have held in sentencing cases that "we will not reject [an] appeal because of the prejudice prong of plain error review" when there has been "a serious departure from established procedures." *Hammons*, 558 F.3d at 1105 (emphasis omitted) (quoting *United States v. Waknine*, 543 F.3d 546, 554 (9th Cir. 2008)). That principle informs our determination regarding the prejudice prong.

c. "Fairness" in Judicial Proceeding. As this court held in *United States v. Castillo-Casiano*:

> It is easy to see why prejudicial sentencing errors undermine the "fairness, integrity, and public reputation of judicial proceedings:" such errors impose a longer sentence than might have been imposed had the court not plainly erred. Defendants . . . may be kept in jail for a number of years on account of a plain error by a court, rather than because their wrongful conduct warranted that period of incarceration. Moreover, there is little reason not to correct plain sentencing errors when doing so is so simple a task. . . . Reversing a sentence does not

8                                                                    19-50207

require that a defendant be released or retried, but simply allows a district court to exercise properly its authority to impose a legally appropriate sentence.

198 F.3d 787, 792 (9th Cir. 1999). Here, Reyes may not face the same level of fundamental unfairness that a lengthy prison sentence would present. The term of supervised release may have no effect on him if he abides by its term: that he not return to the United States. However, violations of supervised release can result in additional jail time. 18 U.S.C. § 3583(e)(3). Because "there is little reason not to correct plain sentencing errors when doing so is so simple a task," *Castillo-Casiano*, 198 F.3d at 792, we vacate the imposition of supervised release and remand for resentencing consistent with this opinion.

The judgment of conviction is **AFFIRMED**; the term of supervised release is **VACATED**; and the case is **REMANDED** for resentencing.



*United States v. Reyes*, No. 19-50207

COLLINS, Circuit Judge, concurring in part and dissenting in part:

I concur in sections 1 and 2 of the memorandum disposition, which affirm Defendant-Appellant Walter Reyes's conviction for felony illegal entry, after a previous conviction for illegal entry, in violation of 8 U.S.C. § 1325(a). But I dissent from section 3, which vacates the district court's imposition of a term of supervised release and remands for resentencing. As the majority notes, Reyes failed to object in the district court to the imposition of a term of supervised release, and so our review is only for plain error. In my view, there was no plain error, much less a prejudicial one that warrants resentencing.

Section 5D1.1(c) of the U.S. Sentencing Guidelines provides that, in sentencing a defendant for any federal offense, the court "ordinarily" should not impose a term of supervised release (except as required by statute) if "the defendant is a deportable alien who likely will be deported after imprisonment." The rationale behind this provision is that, "[i]f such a defendant illegally returns to the United States, the need to afford adequate deterrence and protect the public ordinarily is adequately served by a new prosecution," *i.e.*, a prosecution for illegal entry or re-entry in violation of 8 U.S.C. § 1325 or § 1326. *See* U.S.S.G. § 5D1.1, Commentary, Application Note 5. But Application Note 5 to § 5D1.1 specifically states that a court *should* "consider imposing a term of supervised release on such a

defendant if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case." *Id.*

Given that the rationale for § 5D1.1(c) is that the deterrent effect of a criminal prosecution under § 1325 or § 1326 makes supervised release of a deported alien unnecessary, the paradigmatic case for applying the exception in Application Note 5 is a case in which the defendant already has multiple prior convictions under those provisions. That is, of course, exactly this case. Having been previously deported in 2009, Reyes was convicted in 2010 of a felony violation of § 1326 in the Western District of Texas. He was given an eight-month sentence, followed by a one-year term of supervised release, and he then violated the terms of that supervised release by re-entering the U.S. in Arizona in early 2012 after having been deported in September 2011. That led to his next conviction, this time for a misdemeanor violation of § 1325 in the District of Arizona in 2012, and he was given a six-month sentence. He was again deported in September 2013, but he again returned, leading to the current case, which is his *third* prosecution for illegal entry or re-entry.

The district court, in sentencing Reyes, was obviously exasperated with Reyes's recidivism. The court had an extended colloquy with both defense counsel and government counsel about Reyes's multiple prior deportations and immigration convictions. The court expressed concern about "what message"

2

Reyes got from his prior immigration prosecutions given that he got "less time for it two years later than he got the first time" and was convicted of a felony the first time but only of a misdemeanor the second time. As the court explained, "I'd be genuinely confused if I was Mr. Reyes. I'd think, what's up with this? You commit the same offense, and they downgrade it and give you less time?" The court expressed frustration that the message was not getting through to Reyes: "I mean, he should stay out. We've told him three times, stay out, and he's done two different jail stints on that." In determining the sentence, the court emphasized that Reyes had not been sufficiently deterred by his prior prosecutions, stating: "Obviously, he was not deterred by the eight-month sentence. And it goes without saying he wasn't deterred by the six-month sentence. So here we are, and he faces 15 months" under the Guidelines. The court nonetheless agreed to vary from the Guidelines and to impose a 12-month term of incarceration, based solely on equalizing the sentence to "similarly situated offenders" in the district, but the court also imposed a one-year term of supervised release. And the court made quite clear why it was imposing that term of supervised release: "Mr. Reyes, the terms of supervised release are this: Don't come back again, period. Don't come back. If you come back within the one year, you're going to go back to jail. And don't violate any United States law."

Given this record, the majority is wrong in saying that the district court

3

plainly failed to give an adequate explanation for imposing a term of supervised release on Reyes. Application Note 5 says that a term of supervised release is appropriate if needed for added deterrence, and that was obviously the reason why the district court imposed it here, given that (1) the entire colloquy between the court and counsel at sentencing was focused on the fact that Reyes had not been adequately deterred, and (2) the district court explicitly said that the point of the supervised release term was to make clear that Reyes should not come back and would be promptly jailed if he did. Indeed, the self-evident nature of the district court's rationale is further confirmed by the fact that, in asking the court for a sentence of straight probation, Reyes *himself* had argued that the prospect of a probation revocation should he return to the U.S. provided "a measure of added deterrence" against that happening. It is little wonder, then, that Reyes did not object to the term of supervised release at sentencing.

The majority nonetheless faults the district court because it did not expressly "acknowledge the deviation from the Guidelines" and did not explicitly mention "supervised release" during the colloquy about deterrence. *See* Mem. Dispo. at 7. This "Simons says" approach is directly contrary to controlling Ninth Circuit law. In *United States v. Valdavinos-Torres*, 704 F.3d 679, 692 (9th Cir. 2012), we "adopt[ed]" the "reasoning" of the Fifth Circuit in *United States v. Dominguez-Alvarado*, 695 F.3d 324, 328–30 (5th Cir. 2012), and we favorably noted that the

4

Fifth Circuit upheld a term of supervised release against a deportable alien even though the district court there "did not focus on Section 5D1.1 in imposing" that term. *Valdavinos-Torres*, 704 F.3d at 693. Indeed, the district court's explanation in *Valdavinos-Torres* itself likewise did not mention § 5D1.1. Moreover, *Dominguez-Alvarado* further upheld, as sufficiently particularized, an explanation that the sentence was needed for deterrence, *see* 695 F.3d at 330, even though that explanation likewise did not explicitly reference "supervised release." The majority's magic-words rationale is especially inappropriate on plain-error review, where any failure to mention § 5D1.1, and to tie the court's imposition of supervised release to it, is in large measure due to Reyes's failure to raise the point.

In addition, any asserted error here did not affect Reyes's substantial rights, because Reyes has failed to "show a reasonable probability that he would have received a different sentence" but for the claimed error. *United States v. Dallman*, 533 F.3d 755, 762 (9th Cir. 2008). In reaching a contrary conclusion, the majority contends that the district court's sentencing involved "'a serious departure from established procedures,'" *see* Mem. Dispo. at 8 (citation omitted), but that is wrong for the reasons I have set forth above. The majority also vaguely hints that the imposition of supervised release here may have been substantively unreasonable, because "Reyes' immigration history is not outside the norm in illegal entry cases." *See id*. But the majority commits a serious legal error in assuming that

5

§ 5D1.1(c)'s statement about what should "ordinarily" be done in sentencing deportable aliens is a statement that is *specific to the sentencing of illegal entry offenses*. By its plain terms, § 5D1.1(c) applies to the sentencing of a deportable alien for *any* federal offense. By instead recasting § 5D1.1(c) as a rule about how recidivist illegal re-entrants should "ordinarily" be sentenced, the majority improperly rewrites § 5D1.1(c) and larges guts Application Note 5. Once this legal error is set aside, it is apparent that Reyes has not shown the requisite "reasonable probability" that he would have received a different sentence had the district court specifically mentioned and addressed § 5D1.1(c). Because the prospect of a prosecution for illegal entry—which is the premise for § 5D1.1(c)'s statement that supervised release "ordinarily" should not be applied in sentencing deportable aliens—has been amply shown to have had no effect on Reyes, he is precisely the sort of person for whom Application Note 5 exists. Given that fact, and the fact that the district court made clear that it imposed supervised release in order to stop Reyes from returning to the U.S., any failure of the district court to give an additional on-the-record explanation made no difference here.

Finally, I cannot agree that a failure to require a resentencing in this case would "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 736 (1993) (citation omitted). The majority invokes the principle that there is "little reason" not to err on the side

6

of requiring resentencing "'when doing so is a simple task,'" *see* Mem. Dispo. at 9 (citation omitted), but here it is not so simple. Reyes completed his term of incarceration in this case in mid-December 2019, and he has presumably already been deported back to Honduras. (Indeed, he may have mere weeks left on his term of supervised release.) Thus, Reyes would ironically have to be brought back to the U.S. for a resentencing at which the district court would then decide whether to impose a term of supervised release in order to make sure that he does not come back to the U.S. The difficulty of resentencing in this case is a good reason *not* to mandate the pointless formality that the majority requires.

I respectfully dissent from the vacatur of Reyes's term of supervised release. I would affirm the district court's judgment in full.