NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| FELIX RICARDO FERNANDEZ-MEJIA, AKA Felix Fernandez-Mejia, <br><br> Petitioner, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General, <br><br> Respondent. | No.   20-70412 <br><br> Agency No. A021-148-380 <br><br> MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 3, 2021
San Francisco, California

Before:  WARDLAW and GOULD, Circuit Judges, and PREGERSON,** District Judge.

Felix Ricardo Fernandez-Mejia ("Fernandez") petitions for review of the

Board of Immigration Appeals' ("BIA") dismissal of his appeal from the

Immigration Judge's ("IJ") denial of his applications for asylum, withholding of

---

*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

**      The Honorable Dean D. Pregerson, United States District Judge for the Central District of California, sitting by designation.

removal, and CAT protection. Because the parties are familiar with the facts and procedural history of the case, we do not recite them here. We have jurisdiction under 8 U.S.C. § 1252(a)(1), and we deny the petition.

The petition for review is denied for the following reasons.[1]

1. Fernandez is incorrect that jurisdiction did not vest with the immigration court because his Notice to Appear ("NTA") did not have the time, date, or location of his removal proceedings. In *Karingithi v. Whitaker*, 913 F.3d 1158, 1160 (9th Cir. 2019) and *Aguilar Fermin v. Barr*, 958 F.3d 887, 893–95 (9th Cir. 2020), we have held the regulation requiring this information is not jurisdictional, and any defect in the NTA caused by leaving out this information can be cured if it is given in a later issued Notice of Hearing. Fernandez was given the time, date, and location of the initial hearing in a later issued Notice of Hearing. Any defect in the NTA was thus remedied, and so the immigration court had jurisdiction.

2. Fernandez's Wyoming conviction for attempted voluntary manslaughter categorically is a crime of violence aggravated felony. If an applicant has been convicted of a particularly serious crime, the applicant is ineligible for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and the Convention Against Torture ("CAT"). 8 U.S.C. §§ 1158(b)(2)(A)(ii),

---

[1] Fernandez has also filed a Motion to Stay Removal and a Motion to Take Judicial Notice. Fernandez's Motion to Stay Removal is **DENIED** and Fernandez's Motion to Take Judicial Notice is **GRANTED.**

1231(b)(3)(B)(ii); 8 C.F.R. § 1208.16(d)(2). Under asylum law, an applicant "shall be considered to have been convicted of a particularly serious crime" if the applicant has been convicted of an aggravated felony. 8 U.S.C. § 1158(b)(2)(B)(i). As to withholding of removal, an applicant who has been "convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime." 8 U.S.C. § 1231(b)(3)(B)(iv). These convictions are considered "per se" particularly serious crimes. *Blandino-Medina v. Holder*, 712 F.3d 1338, 1345 (9th Cir. 2013).

To determine if Fernandez's conviction for attempted voluntary manslaughter is an aggravated felony, we follow the "categorical approach." *See United States v. Valdavinos-Torres*, 704 F.3d 679, 686–87 (9th Cir. 2012) (citing *Taylor v. United States*, 495 U.S. 575, 602 (1990)).

Further, a "crime of violence" is defined under 18 U.S.C. § 16(a) as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." "[U]se of physical force" under 18 U.S.C. § 16(a) "requires active employment," and so, requires "a higher degree of intent than negligent or merely accidental conduct." *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004). Physical force under 18 U.S.C. § 16(a) means "*violent* force—that is, force

capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (emphasis in original).

First, attempted voluntary manslaughter has the requisite mental state to be considered "active employment" of force, because it is both a specific intent crime and involves intentional conduct. *Reilly v. State*, 55 P.3d 1259, 1262 (Wyo. 2002), *abrogated on other grounds by Granzer v. State*, 193 P.3d 266 (Wyo. 2008).

Second, voluntary manslaughter involves violent, physical force. Because the force used in voluntary manslaughter is force than can cause death, an attempt to commit the act results from "attempted use of physical force." *See United States v. Castelman*, 572 U.S. 157, 169–170 (2014) (concluding that crimes prohibiting causing bodily injury are crimes of domestic violence because "'bodily injury' must result from 'physical force'"). Fernandez's conviction is a per se particularly serious crime that precludes both asylum and withholding of removal, since it is an aggravated felony for which he was sentenced to at least five years in prison. Thus, Fernandez is ineligible for asylum or withholding of removal.

3. Substantial evidence supports the agency's finding that Fernandez did not establish eligibility for CAT deferral. 8 C.F.R. §§ 1208.16(c)(4), 1208.17(a). First, Fernandez did not show a clear probability of future torture or provide evidence of past torture. Substantial evidence supports the IJ's finding that Fernandez could relocate in Honduras to avoid torture, that his mental illness and homelessness did

not establish an individualized risk of torture, and that he would be targeted for torture. Second, substantial evidence also supports the conclusion that Fernandez did not establish a clear probability of government acquiescence to torture. The IJ properly based this conclusion on the fact that Fernandez was able to file multiple police reports, and that the police followed up on at least one occasion. Further, country conditions evidence suggests that the Honduran government has taken measures to fight crime and corruption. Thus, the IJ correctly determined the evidence did not establish a clear probability the Honduran government would acquiesce to torture.

**PETITION DENIED.**