United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 29, 2005**

Charles R. Fulbruge III
Clerk

I n the

# United States Court of Appeals
## for the Fifth Circuit

---

m 05-10323

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee.

VERSUS

ISMAEL PALACIOS-QUINONEZ,

Defendant-Appellant,

---

Appeal from the United States District Court
for the Northern District of Texas
m 7:04-CR-12-ALL

---

Before DAVIS, SMITH, and DENNIS,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Ismael Palacios-Quinonez appeals his sentence. Finding no reversible error, we affirm.

I.

Palacios-Quinonez is a Mexican national who pleaded guilty of having reentered the United States illegally following his removals in 1995 and 2000. At sentencing, his base offense level of 8 was increased by a sixteen-level enhancement pursuant to U.S.S.G. § 2L1.2-(b)(1)(A) (2004) because he had unlawfully remained in the United States after being convicted in 1992 of a crime of violence and in 1990 of a felony drug trafficking offense for which the sentence imposed was greater than 13 months. The enhancement was based on his California convictions of "possession for

sale" of cocaine and assault causing great bodily injury.

Based on the new offense level, Palacios-Quinonez's guidelines sentence range was 46-57 months' imprisonment and two to three years' supervised release. He objected to the 16-level enhancement (arguing that his California offenses were not covered by § 2L1.2-(b)(1)(A)). He also contended that 8 U.S.C. § 1326(b)(1) and (2) should be treated as separate offenses instead of sentencing factors and that *Almendarez-Torres v. United States*, 523 U.S. 224, 239-47 (1998), was incorrectly decided and should be overruled.

At sentencing, which occurred after the issuance of *United States v. Booker*, 125 S. Ct. 738 (2005), the district court adopted the sentence range found in the presentence report and sentenced Palacios-Quinonez to 46 months' imprisonment and two years' supervised release. On appeal, Palacios-Quinonez raises four issues: (a) whether his California conviction of aggravated assault qualifies as a crime of violence; (b) whether a conviction of "purchase for purposes of sale" of cocaine constituted a drug trafficking offense under § 2L1.2(b)(1)(A); (c) whether § 1326(b)(1) and (2) should be treated as separate offenses instead of sentencing factors; and (d) whether *Almendarez-Torres* should be overruled.

I.

Palacios-Quinonez contends, for the first time on appeal, that his California conviction of possession for sale of cocaine does not qualify as a drug trafficking offense. In the district court he objected to this conviction on the ground that he did not receive a sentence of thirteen months or more. Because he did not challenge the application of the sixteen-level enhancement on the same ground as he challenges it in this court, he did not pre-

serve the error for appeal, so we review only for plain error. *See United States v. Mares*, 402 F.3d 511, 516, 520 (5th Cir.), *cert. denied*, 126 S. Ct. 43 (2005).

To establish plain error, Palacios-Quinonez must demonstrate that (1) there is an error, (2) that is plain by being clear or obvious, and (3) that affects his substantial rights. *United States v. Olano*, 507 U.S. 725, 731-37 (1993). Absent the enhancement, Palacios-Quinonez's guidelines sentencing range would have been 18-24 months, substantially less than the 46 months he received, so an error in the application of the enhancement would affect his substantial rights. *See United States v. Garza-Lopez*, 410 F.3d 268, 275 (5th Cir.), *cert. denied*, 126 S. Ct. 298 (2005). Accordingly, the issues for this court are whether the district court erred in finding that Palacios-Quinonez's conviction was for a drug trafficking offense and whether the error was plain. *See Olano*, 507 U.S. at 731-37.

Pursuant to § 2L1.2(b)(1)(A)(i), a sixteen-level enhancement applies if, before removal, the defendant was convicted of a felony that was "a drug trafficking offense for which the sentence imposed exceeded 13 months." Under this provision, a drug trafficking offense "means an offense under federal, state, or local law that prohibits the manufacture, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." § 2L1.2 cmt. n.(1)(B)(iv). To determine whether a conviction qualifies as a drug trafficking offense under § 2L1.2(b)(1)(A)(i), we follow *Taylor v. United States*, 495 U.S. 575, 602 (1990), which directs us, when classifying a prior offense for sentence enhancement purposes, to look to the elements rather than

to the facts underlying the conviction. *See Garza-Lopez*, 410 F.3d at 273. But, in some cases, including those involving a determination of whether a drug trafficking offense was committed, a court may also consider three additional factors: the statutory definition of the offense, the charging paper, and the jury instructions. *Id.*

Both parties agree that Palacios-Quinonez was convicted under CAL. HEALTH & SAFETY CODE § 11351, and the government has supplemented the record to show that the conviction was under that statute. One can be convicted under that statute if he either "possesses for sale" or "purchases for purposes of sale" certain narcotics, including cocaine. Palacios-Quinonez contends that although "possession for sale" qualifies as a drug trafficking offense, "purchase for sale" does not, and thus the enhancement was improper because it is impossible to determine under which prong of the statute he was convicted. We concur in that narrow assertion[1] but do not agree that "purchase for purposes of sale" does not involve "possession" with intent to distribute as required by the guidelines.

We are persuaded by *United States v. Estrada-Soto*, 113 Fed. Appx. 223, 224 (9th Cir. 2004) (mem.), *cert. denied*, 125 S. Ct. 1430 (2005), that "'[p]urchase' of cocaine for the purpose of sale is not obviously different from, or broader than," constructive possession. In California, "constructive possession includes

maintaining control over, or the right to control, controlled substances." *Id.* (citing *People v. Showers*, 440 P.2d 939 (Cal. 1968); California Jury Instructions-Criminal 12.01). Similarly, a completed purchase transfers the "legal" right to control the substance from the seller to the purchaser or his agents.

Palacios-Quinonez argues that under California law, namely *Armstrong v. Superior Court*, 217 Cal. App. 3d 535, 539-40 (1990), "it is possible to purchase controlled substances without actually or constructively possessing them." This theory is without merit.

First, *Armstrong* dealt with a situation involving an inchoate offense under a different statute (possession of a controlled substance). There, evidence existed that the undercover police officer selling the drugs was not willing to let the purchaser exercise his right to control the drugs. *Id.* at 538 (noting that the defendant was arrested before delivery of the drugs and that the seller testified he was not "going to . . . let a pound of methamphetamine walk away"). As *Armstrong* clarifies, its holding advances the unremarkable proposition that an (uncompleted) attempt to posses is not the same as (completed) possession, actual or constructive:

> Here, there is evidence petitioner exercised some control over the physical setting in which the sale was to take place. He initiated the sale process of the drugs. He agreed to meet the officer at a particular location. He paid Officer Heggestuen. He was prepared to take immediate physical possession of the drugs. We believe, and defendant agrees, that while such actions may establish the offense of attempted possession of a controlled substance . . ., they do not demonstrate he was exercising "control" over the contraband itself for purposes

---

[1] There is no evidence that Palacios-Quinonez was convicted under the "possession" prong of the statute, other than his statement at a hearing in the instant case that drugs that were not his were found in his car. That statement is not proper evidence for this court. The abstract of judgment is also inconclusive and in any event is not proper evidence for us to consider under *Taylor*.

3

of finding constructive possession. He did not direct the contraband be moved within a room. Nor did he take any other action which exhibits control over the drugs.

*Id.* at 540.[2]

In fact, the *Armstrong* court, *id.* at 540 n.2, expressly declined to decide whether someone, like the defendant there, lacking constructive possession, could ever be convicted of purchase for sale: "This opinion is not intended to resolve the viability of a prosecution under the same or similar facts as a purchase for purposes of sale." Because of this express disclaimer, we do not find persuasive the view expressed in *United States v. Navarro-Coyazo*, 108 Fed. Appx. 490, 491 n.1 (9th Cir. 2004) (mem.), that *Armstrong* "impl[ied] that a defendant who arranges to buy, and pays for, a controlled substance, but who never constructively or actually possesses the substance, could nonetheless be prosecuted for 'purchasing' the drug."[3] To the contrary, the *Armstrong* court specifically avoided deciding whether an agreement to buy, coupled with payment, constitutes "purchase" of a controlled substance, or whether, instead, it is merely an "attempted purchase" of a controlled substance.[4]

Second, *Armstrong*'s reasoning is consistent with our position that purchase of cocaine for the purpose of sale is not obviously different from, or broader than, constructive possession. Because "purchase" involves the transfer of a right to control from the seller to the buyer, a transaction in which the "transfer" is not completed is not a purchase, but only an attempted purchase.

In most cases, the right to control probably transfers close to the moment when an agreement is reached and payment is delivered, even if actual delivery has not occurred. In a few cases, however, where there is an impossibility of performance, as for instance where the seller never intends to deliver the drugs or intends to deliver a substance that is not controlled, a transfer cannot be said to occur. Only an attempted purchase can be said to occur in those cases. Therefore, absent the transfer of the right to control the drugs, there is neither a "purchase with intent to sell" nor constructive possession, unless the purchaser actively performs some other act that indicates control or right to control.

For instance, if a purchaser paid for seven vials of cocaine but received seven vials of sugar, he cannot be said to be guilty of "purchase" of cocaine. In other words, he could not be said to have purchased cocaine, because he did not have any legal "right to control" the nonexistent cocaine. He could be viewed as

---

[2] *See also Estrada-Soto*, 113 Fed. Appx. at 224 (also distinguishing *Armstrong* because it dealt with an inchoate crime). We agree with the *Estrada-Soto* court that *People v. Howard*, 33 Cal. App. 4th 1407 (1995), is distinguishable because, like *Armstrong*, it involved a different statute and an inchoate crime (conspiracy).

[3] *Navarro-Coyazo*'s reliance on California Jury Instructions§§Criminal 12.01 is also questionable, because the instructions merely say that either purchase or actual or constructive possession needs to be proven for purposes of the statute. This does not exclude the possibility that a purchase actually involves constructive possession.

[4] The decision in *United States v . Bowman*, 116 Fed. Appx. 840 (9th Cir. 2004) (mem.), is also distinguishable, because there the government conceded that a statute that criminalized both possession and purchase for sale was overbroad, *see id.* at 843.

having attempted to purchase cocaine.

We are not suggesting that a simple delay in delivery of drugs means that one could never be said to have "purchased" the drugs. Transfer of control does not require an actual "delivery" of a drug. Although actual delivery helps prove control, "control" (and thus possession and purchase) are broader than "delivery." A buyer could have "constructive possession" before *actual* delivery: "Even within a controlled setting or its equivalent, a defendant might so directly verbalize disposition or movement of the drug as to warrant the inference he possesses it." *Armstrong*, 217 Cal. App.3d at 539.

For instance, buyer B could directly verbalize disposition of the drug directly from A (B's seller) to C, a third party who in turn paid B for the drugs. The purchase would be completed without B's ever obtaining actual delivery. But, because B exercised control of the goods by selling them, he would be found to have had constructive possession under *Armstrong*'s guidance.[22] Where performance is impossible, however, the right to control is not transferred, and neither "purchase" nor "constructive possession" can take place.[23]

Palacios-Quinonez relies on *United States v. Garza-Lopez*, 410 F.3d 268 (5th Cir.), *cert. denied*, 126 S. Ct. 298 (2005), to suggest that purchases for sale do not fall within the definition of a drug trafficking offense. The *Garza-Lopez* panel, however, only decided that neither "the transportation of a controlled substance for personal use" nor "offers to transport, sell, furnish, administer or give away a controlled substance" is covered by the definition of drug trafficking. *Id.* at 274.

Accordingly, the fact that "possession with intent to distribute" under the guidelines does not encompass an "offer to sell" has no effect on whether it encompasses a "purchase for sale." Someone who offers to sell need not have possession as required by the guidelines. Rather, one can misrepresent ownership or control of the offered goods, such as where one is offering to sell the proverbial Brooklyn Bridge. By contrast, to accomplish a purchase of a drug for sale, one must have at least constructive possession. This offense, unlike a mere offer to sell, would satisfy the elements of "possession with intent to distribute."

Finally, we reject Palacios-Quinonez's argument that the definition of "possession" un-

---

[22] *See also United States v. Virciglio*, 441 F.2d 1295 (5th Cir. 1971) (finding constructive possession where defendant never touched a weapon that he purchased from a third party and arranged to sell to undercover officer, because the sale to the officer indicated that defendant had control over the weapon).

[23] Palacios-Quinonez argues that if we read "purchase for purposes of sale" always to imply constructive possession, we render the phrase "purchase for purposes of sale" meaningless. We disagree.

(continued...)

[23](...continued)
Possession is distinguishable from purchase. Palacios-Quinonez would have us hold that purchase is broader than possession; but we reach the opposite conclusion. A purchaser is someone with a clear legal right to control acquired through transfer. A possessor, however, could be, *inter alia*, (1) a purchaser, (2) someone with legal right to control who did not acquire the legal right through transfer (*e.g.,* manufacturer), (3) someone with actual control but who does not have a legal right to control (e.g., a thief), or (4) someone with actual control who does not have a clear legal right to control (e.g., a finder).

der the guidelines does not encompass constructive possession because, he contends, under the plain meaning of the word "possession," one who exercises possession is not literally "in possession." It is well established that possession encompasses constructive possession.[24] Because we conclude that Palacios-Quinonez was convicted of a drug trafficking offense that warrants a sixteen-level enhancement, we need not decide whether his aggravated assault conviction constituted a crime of violence.

## II.

Palacios-Quinonez also urges that 8 U.S.C. § 1326(b)(1) and (2) should be treated as separate offenses instead of sentencing factors. He acknowledges that this argument was rejected in *Almendarez-Torres*, but he asserts that a "critical component of the *Almendarez-Torres* holding" was repudiated in *Dretke v. Haley*, 541 U.S. 386 (2004). He contends that *Haley* suggested that the continuing vitality of *Almendarez-Torres* holding is a difficult constitutional question "to be avoided if possible." Relying on *Haley*, Palacios-Quinonez argues that this court should construe § 1326-(b)(1) and (2) as separate offenses to avoid the difficult constitutional question of the continuing vitality of *Almendarez-Torres*.

Palacios-Quinonez's argument based on *Haley*, although novel, is without merit. As he

admits, the Court held in *Almendarez-Torres*, 523 U.S. at 229-47, that § 1326(b)(1) and & (2) are sentencing factors, not separate offenses, and that they are constitutional. Thus, construing § 1326(b)(1) and (2) as separate offenses would require us to declare that *Almendarez-Torres* is overruled. To the contrary, we abide by *Almendarez-Torres* "unless and until the Supreme Court itself determines to overrule it." *United States v. Dabeit*, 231 F.3d 979, 984 (5th Cir. 2000) (quotation marks omitted). The Court did not overrule *Almendarez-Torres* in *Haley*. *See Haley*, 541 U.S. at 395-96.

In the alternative, Palacios-Quinonez avers that § 1326(b)(1) and (2) are unconstitutional in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and that *Almendarez-Torres* was wrongly decided. He concedes that his alternative argument is foreclosed and raises it to preserve it for further review. We agree that the issue is foreclosed.

The judgment of sentence is AFFIRMED.

---

[24] *See, e.g., United States v. Virciglio*, 441 F.2d 1295 (5th Cir. 1971) (sustaining conviction of possession of unregistered firearm where defendant exercised only constructive possession); *United States v. Felts*, 497 F.2d 80, 82 (5th Cir. 1974) (sustaining conviction of drug possession with intent to distribute where defendant had only constructive possession when he arranged for his friends to sell drugs to undercover police agent while he went to a concert).