W. EUGENE DAVIS, Circuit Judge:
In response to the Petition for Rehearing filed by the government, we withdraw the prior panel opinion in its entirety and substitute the following:
The question before this court is whether a charge and conviction for “possession *715 with an intent to deliver” a controlled substance under section 481.112(a) of the Texas Health and Safety Code can be used as a basis for a sentence enhancement as a “controlled substance offense” under U.S. Sentencing Guidelines Manual (“USSG”) § 2K2.1(a)(4)(A) (2005). “Controlled substance offense” is defined in USSG § 4B1.2(b). USSG § 2K2.1 cmt. n. 1. USSG § 4B1.2(b) states:
The term “controlled substance offense” means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.
We hold that the conviction in this case for “possession with intent to deliver” under this Texas statute qualifies as a “controlled substance offense.” “Possession with intent to deliver” is indistinguishable from the offense of “possession with intent to distribute,” one of the offenses listed in USSG’s definition of a “controlled substance offense.” We therefore AFFIRM Ford’s sentence.
FACTS
On July 14, 2005, Houston police officers Tran and Ponder responded to a call from an individual stating that he had just seen the person who shot him a few days earlier. The officers went to the stated address and saw the alleged shooter inside the apartment who matched the description provided. Returning to the apartment with a Bureau of Alcohol, Firearms, and Tobacco (ATF) Special Agent, the agents confronted the suspect, later identified as defendant Jason Jermaine Ford, and the apartment lessee, Crystal McConnell, at the door. McConnell denied having a firearm in the apartment and consented to a search. While searching, the defendant informed the officers that there was a .32 caliber firearm on a chair, which Officer Tran immediately recovered. Ford was then arrested and advised of his rights. The ATF agent determined that the firearm was manufactured outside of the state of Texas.
On September 8, 2005, a federal grand jury indicted the defendant on one count of possession of a firearm after being convicted of a felony offense, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Ford entered a guilty plea on November 18, 2005.
The presentence report calculated Ford’s total offense level to be seventeen, starting with a base offense level of twenty, pursuant to USSG § 2K2.1(a)(4)(A) for a prior “controlled substance offense” and then subtracting three levels for the acceptance of responsibility pursuant to USSG § 3E1.1(a) and (b). A total offense level of seventeen combined with a criminal history category of IV resulted in an imprisonment range of thirty-seven to forty-six months. Ford objected to the presentence report, arguing that his conviction was under a Texas statute that penalized acts and intents outside the USSG’s “controlled substance offense” definition. As a result, Ford argued that his conviction should not qualify as a “controlled substance offense.” Ford’s charging documents, the indictment, and the judgment were available to the district court judge. No underlying facts about the conviction were provided in these documents.
Based on a comparison between the language of the conviction offense and underlying statute as found in these documents with the definition of “controlled substance offense” in the USSG, the court below overruled Ford’s objection. Ford was *716 therefore sentenced on February 10, 2006, to serve thirty-seven months followed by three years of supervised release.

Analysis

This court reviews the district court’s interpretation and application of the USSG de novo. United States v. Zuniga-Peralta, 442 F.3d 345, 347 (5th Cir.2006). Because Ford’s objection was preserved at trial, we review the record de novo to determine whether the district court’s error was harmless. United States v. Lopez-Urbina, 434 F.3d 750, 765 (5th Cir.2005).
The issue presented before this court is whether a conviction for “possession with intent to deliver” criminalizes conduct beyond that which is subject to sentencing enhancement as a “controlled substance offense.” Ford relies on two cases which he contends demonstrate that his prior offense — possession of intent to deliver — criminalizes conduct not subject to this enhancement. In two closely analogous decisions, this court held similar convictions to be broader than a nearly identical USSG definition of another offense subject to sentencing enhancement.
In United States v. Garza-Lopez, 410 F.3d 268, 271 (5th Cir.2005), the defendant was previously convicted for “transporting/selling a controlled substance” under section 11379(a) of the California Health & Safety Code and for that previous conviction, the district court added a sentence enhancement for a “drug trafficking offense” under USSG § 2L1.2(b)(1)(A)(i). See USSG § 2L1.2 cmt. n. 1(B)(iv) (defining “drug trafficking offense”).[1] This court held that the “transporting/selling a controlled substance” offense under the California statute was broader than the USSG’s definition of “drug trafficking offense.” Id. at 274-75. See also United States v. Kovac, 367 F.3d 1116, 1119 (9th Cir.2004); United States v. Navidad-Marcos, 367 F.3d 903 at 907-08 (9th Cir.2004). The California statute, for instance, “criminalizes the transportation of a controlled substance for personal use and offers to transport, sell, furnish, administer, or give away a controlled substance.” Garza-Lopez, 410 F.3d at 274. None of the listed activities is covered by the “drug trafficking offense” definition, which “covers only the manufacture, import, export, distribution, or dispensing of a controlled substance (or possession with the intent to do any of these things).” Id. Therefore this court concluded the district court had committed plain error in adding a sentencing enhancement, because the basis for defendant’s underlying conviction could be conduct that lies outside the narrow definition of a “drug trafficking offense.” Id. at 275.
In United States v. Gonzales, 484 F.3d 712, 714-15 (5th Cir.2007) (per curiam), this court held that a conviction for unlawful delivery of a controlled substance under a different subsection of section 481.112 of the Texas Health and Safety Code, was broader than the limited set of offenses subject to a sentencing enhancement under the USSG’s definition of “drug trafficking offense.” In Gonzales, the court noted that “delivery” encompasses an “offer to sell” under the Texas statutory definition, and an “offer to sell” is not one of the acts included within the “drug trafficking offense” definition. Id. See also Tex. Health & Safety Code Ann. *717 § 481.002(8) (defining “deliver”); Donley v. State, 140 S.W.3d 428, 429 (Tex.App.2004) (interpreting “delivery” as any actual transfer, constructive transfer, or offer to sell); Garza-Lopez, 410 F.3d at 273 (listing “offers to ... sell” as conduct outside USSG’s definition of “drug trafficking offense”).
Neither of the above cases controls the outcome of this appeal.
The significant distinction in this case is that unlike the two cases discussed above, the conviction here was for possession with the intent to deliver rather than just delivery or transportation.[2] In the instant case, Ford’s indictment charged him with possession with intent to deliver. According to the USSG, the term “controlled substance offense” includes offenses that prohibit the “possession of a controlled substance ... with intent to ... distribute.” USSG § 4B1.2(b). We agree with the government that it is pure sophistry to distinguish between the conduct of one who possesses drugs with intent to deliver those drugs and one who possesses drugs with intent to distribute them. United States v. Palacios-Quinonez, 431 F.3d 471 (5th Cir.2005), demonstrates this point.
In Palacios-Quinonez, the defendant had previously been convicted under a California statute that prohibited both possession of drugs for sale (which was conceded to be a drug trafficking offense) and purchase of drugs for purpose of sale. Because it was impossible to determine under which prong Palacios-Quinonez was convicted, the court had to determine whether a “purchase for purpose of sale” also fell within the definition of a drug trafficking offense. In Palacios-Quinonez, this court noted one major difference between a conviction for an “offer to sell” controlled substances and a conviction for a “purchase for sale” of a controlled substance. One may “offer to sell” drugs without possessing those drugs. One who “purchases for sale” however has either actual or constructive possession of the controlled substance. We concluded that the offense of “purchase for sale” was equivalent to the controlled substance “possession with intent to distribute.”
For purposes of qualifying as a controlled substance offense, Ford’s conduct is indistinguishable from Palacios’ conduct. Ford possessed drugs with intent to deliver or pass them on to another. Palacios purchased drugs (and thereby actually or constructively possessed them) and intended to sell them to another. The conduct in both instances is equivalent to the drug trafficking offense, possession of a controlled substance with intent to distribute.
Accordingly, the district court did not err in enhancing Ford’s sentence pursuant to USSG § 2K2.1(a)(4)(A).[3] For the rea *718 sons stated above, we therefore AFFIRM the sentence.
AFFIRMED.

. " 'Drug trafficking offense’ means an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.” USSG § 2L1.2 cmt. n. 1(B)(iv).

. "Drug trafficking offense,” and not "controlled substance offense," is the operative USSG offense in the two analogous cases described above. However, the definitions of "drug trafficking offense” and "controlled substance offense” are almost identical. Compare USSG § 2L1.2 cmt. n. 1(B)(iv) ("drug trafficking offense”), with USSG § 4B1.2(b) ("controlled substance offense”). Any minor textual differences do not control in this case. Therefore, the definitions of "controlled substance offense” and "drug trafficking offense” are identical for our purposes here. Cf. United States v. Gonzalez-Borjas, 125 Fed.Appx. 556, 559 & n. 9 (5th Cir.2005) (unpublished).

. In order to preserve the argument for further review, Ford also contends that his indictment under 18 U.S.C. § 922(g)(1) is unconstitutional both facially and as applied. An indictment under 18 U.S.C. § 922(g)(1) requires an effect on interstate commerce. Ford argues that where the only interstate commerce nexus is the fact that the firearm at some point in the past traveled across state lines contravenes the limits of the commerce power as defined in United States v. Lopez, 514 U.S. 549, 551, 115 S.Ct. 1624, 131 *718 L.Ed.2d 626 (1995). But he concedes his argument is foreclosed by several opinions by this court. See e.g., United States v. Daugherty, 264 F.3d 513, 518 (5th Cir.2001).