# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

―――――――

14-40059

―――――――

United States Court of Appeals
Fifth Circuit

**FILED**

March 31, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

ELMER GOMEZ-ALVAREZ

Defendant-Appellant

―――――――

Appeal from the United States District Court
for the Southern District of Texas

―――――――

Before HIGGINBOTHAM, CLEMENT, and HIGGINSON, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Elmer Gomez-Alvarez pled guilty to illegal reentry in violation of 8 U.S.C. § 1326. He appeals from his sentence to challenge the district court's imposition of a 16-level sentencing enhancement based on a prior conviction for a drug trafficking offense. We affirm.

## I.

Gomez-Alvarez pled guilty without a written plea agreement to being unlawfully present in the United States after previously having been deported. His pre-sentence report ("PSR"), which relied on the 2013 version of the Sentencing Guidelines Manual, recommended a 16-level sentencing enhancement for a prior "drug trafficking offense" conviction pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(i). The PSR based its recommendation on a prior

No. 14-40059

conviction for possession for sale of a controlled substance in violation of California Health and Safety Code § 11351. The PSR listed "Jorge Ortiz" as one of several aliases used by Gomez-Alvarez and indicated that Gomez-Alvarez had been convicted of the offense in California "using the name Jorge Ortiz."[1] Attached to the PSR was a California felony complaint in case number BA306677, dated July 31, 2006 (the "Complaint"). Count one of the Complaint charged Jorge Ortiz with "possess[ion] for sale and purchase for sale [of] a controlled substance, to wit, heroin."[2] Also attached to the PSR was an abstract of judgment in case number BA306677, dated August 16, 2006 (the "Abstract"). The Abstract indicated that, on August 7, 2006, Jorge Ortiz pled guilty to "possession for sale of [a] controlled substance" under section 11351, but it did not specify the substance.[3] Application of the sentencing enhancement based on the California offense resulted in a total offense level of 22 and a criminal history category of V, which produced a guideline range for imprisonment of 77 to 96 months.

Gomez-Alvarez raised several written objections to the PSR. Relevant for our purposes, he objected to the 16-level enhancement on grounds that the documents relied upon by the government failed to establish the fact of a qualifying predicate conviction. He argued that the language of the California statue is overbroad—that is, it "encompasses conduct that falls outside the contemporary generic meaning of a drug trafficking offense"—and that, although "the charging instrument [the Complaint] allege[d] . . . possession and purchase of heroin," the Abstract did not specify a controlled substance.[4] Therefore, he asserted, the government failed to establish "that, in fact, there

---

[1] R. at 74, 81.
[2] *Id.* at 89.
[3] *Id.* at 95.
[4] *Id.* at 67-68.

2

No. 14-40059

was a plea to possession and purchase of *heroin*, or that the controlled substance involved is actually a controlled substance under federal law."[5] Finally, Gomez-Alvarez raised the following one-sentence written objection: "Further, it has not been established with credible documentation that the person purportedly convicted was, in fact, Mr. Gomez-Alvarez."[6]

Gomez-Alvarez's probation officer responded to the written objections in an addendum to the PSR. The probation officer, like counsel for Gomez-Alvarez, referred to the Complaint as the "charging instrument."[7] The addendum to the PSR did not address Gomez-Alvarez's objection regarding whether "Jorge Ortiz" was actually Gomez-Alvarez. During Gomez-Alvarez's sentencing hearing, counsel for Gomez-Alvarez did not orally raise an objection regarding whether "Jorge Ortiz" and Gomez-Alvarez were one and the same.

The district court rejected Gomez-Alvarez's objections. Citing *United States v. Cruz-Campos*,[8] it reasoned that, absent anything in the record affirmatively casting doubt on or creating ambiguity about the Complaint, it could conclude that the language of the Complaint—as the charging instrument—governed the prior conviction and established as a factual matter that the conviction was for possession of heroin. The district court adopted the facts and findings contained in the PSR, but it did not explicitly address whether Jorge Ortiz was, in fact, Gomez-Alvarez.

Gomez-Alvarez then argued in favor of a below-guideline-range sentence on grounds that his criminal history was over-represented. The district court agreed and concluded that criminal history category IV more accurately represented Gomez-Alvarez's criminal history. As a result, Gomez-Alvarez's

---

[5] *Id.* at 67 (emphasis added).
[6] *Id.*
[7] *Id.* at 106.
[8] 551 F. App'x 251 (5th Cir. 2014) (per curiam) (unpublished).

No. 14-40059

guideline range for imprisonment was reduced to 57 to 71 months.[9] The district court sentenced Gomez-Alvarez to 57 months of imprisonment and did not impose a term of supervised release. Gomez-Alvarez timely appealed.

## II.

Gomez-Alvarez raises two arguments on appeal: first, that the district court misapplied section 2L1.2 because section 11351 is not categorically a "drug trafficking offense" and the Complaint and Abstract do not establish as a factual matter that the conviction was for a qualifying offense; and second, that the government failed to establish at sentencing that the person convicted under section 11351 was, in fact, Gomez-Alvarez.

### A. Standard of Review

Where a defendant preserves error by objecting at sentencing, we review the sentencing court's factual findings for clear error and its interpretation or application of the Sentencing Guidelines de novo.[10] "There is no clear error if the sentencing court's finding is plausible in light of the record as a whole."[11]

Gomez-Alvarez provided written objections at sentencing regarding each issue designated on appeal. The government concedes that Gomez-Alvarez preserved his first argument by lodging an oral objection before the sentencing judge. The government contends, however, that Gomez-Alvarez's one-sentence written objection regarding his second argument failed to adequately direct the district court's attention to that issue. The government urges review for plain error rather than clear error. We have held, however, that "[o]nce a party raises an objection in writing," even "if he subsequently fails to lodge an oral on-the-

---

[9] The district court had previously granted the government's motion for a one-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b), which had resulted in a total offense level of 21 and a criminal history category of V and produced a guideline range for imprisonment of 70 to 87 months.

[10] *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

[11] *Id.* (internal quotation mark omitted).

record objection the error is nevertheless preserved for appeal."[12] As Gomez-Alvarez's written objection was "clear enough to provide the district court with opportunity to rule on it,"[13] we review for clear error.

## B. Analysis

Sentencing Guidelines section 2L1.2(b)(1)(A)(i) provides for a 16-level enhancement to a defendant's base offense level if he was previously deported after a conviction for a felony "drug trafficking offense" for which the sentence imposed exceeded 13 months.[14] The application note to section 2L1.2 defines the term "drug trafficking offense" to mean:

> . . . an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.[15]

"The [g]overnment bears the burden of proving by a preponderance of the relevant and reliable evidence that the facts support a sentencing enhancement."[16] We consider in turn each issue Gomez-Alvarez designates on appeal.

### 1. *Whether the California Conviction Qualifies as a "Drug Trafficking Offense"*

Under the categorical approach set forth in *Taylor v. United States*, a sentencing court looks to the elements of a prior offense, rather than the facts underlying the conviction, when classifying a prior offense for sentence

---

[12] *United States v. Medina-Anicacio*, 325 F.3d 638, 642 (5th Cir. 2003).

[13] *See id.*

[14] U.S.S.G. § 2L1.2(b)(1)(A)(i).

[15] *Id.* § 2L1.2, cmt. n.1(B)(iv).

[16] *United States v. Rodriguez*, 523 F.3d 519, 524 (5th Cir. 2008).

enhancement purposes.[17] If the statutory definition of the prior offense criminalizes some conduct that would not constitute a qualifying offense for enhancement, then "the statute is not a categorical fit."[18]

The Supreme Court has developed a "modified" categorical approach for those cases where "a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction," precluding a categorical determination of whether the offense qualifies to support an enhancement.[19] Under the modified approach, a later sentencing court determining the character of a prior offense to which a defendant pled guilty is permitted to look beyond the fact of conviction and the statutory definition of the prior offense.[20] The Supreme Court held in *Shepard* that such inquiry "is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."[21]

Our analysis proceeds in two parts: first, whether a conviction under section 11351 categorically qualifies as a predicate offense under section 2L1.2; and if not, second, whether, under the modified categorical approach, the government has established by introduction of *Shepard*-approved documents that the instant conviction qualifies.

**a.**

Section 11351, which criminalizes "[p]ossession or purchase for sale of designated controlled substances," is a divisible statute—one that sets out one

---

[17] 495 U.S. 575, 602 (1990); *see also Rodriguez*, 523 F.3d at 524 (applying *Taylor* in the Sentencing Guidelines context).

[18] *United States v. Leal-Vega*, 680 F.3d 1160, 1164 (9th Cir. 2012).

[19] *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013).

[20] *See Shepard v. United States*, 544 U.S. 13, 17 (2005).

[21] *Id.* at 16.

or more elements in the alternative.[22] Gomez-Alvarez argues that although some of the alternative elements under section 11351 fall within the definition of a "drug trafficking offense" under section 2L1.2, other alternative elements do not, precluding categorical qualification. We agree.

In *United States v. Leal-Vega*,[23] the Ninth Circuit considered a similar challenge to a sentencing enhancement under section 2L1.2 based on a prior conviction under section 11351. The court conducted an extensive categorical analysis focused on how to interpret the term "controlled substance" under the Sentencing Guidelines.[24] The court posed two alternative possible meanings: (1) the "ordinary, common sense meaning, as a drug regulated by law"; or (2) a meaning "tied to the federal definition of controlled substances from the CSA."[25] In rejecting the first alternative—"a drug regulated by law"—the court noted that under that definition whether a drug were regulated by law would "*necessarily* depend on the state statute at issue."[26] This, the court reasoned, would conflict with *Taylor*'s vision for a uniform generic definition under federal law independent of the definition applied by any particular state of conviction.[27] The court adopted the second meaning, tied to the definition of controlled substances under the CSA. It held that section 11351 "is

---

[22] For our purposes, the 2000 version of section 11351 effective at the time of the 2006 conviction is identical to the 2011 version of section 11351 effective today. Section 11351 contains several alternative elements: (1) possession for sale or purchase for sale of "any controlled substance specified in [various alternative subdivisions of related sections]"; or (2) possession for sale or purchase for sale of "any controlled substance classified in Schedule III, IV, or V which is a narcotic drug." Cal. Health and Safety Code § 11351 (2000).

[23] 680 F.3d 1160 (9th Cir. 2012).

[24] *See id.* at 1164-67.

[25] *Id.* at 1164. 21 U.S.C. § 802 (the "Controlled Substances Act" or "CSA") defines "controlled substance" to "mean[] a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter. The term does not include distilled spirits, wine, malt beverages, or tobacco, as those terms are defined or used in subtitle E of the Internal Revenue Code of 1986."

[26] 680 F.3d at 1164, 1166-67.

[27] *See id.* at 1166 (quoting *Taylor v. United States*, 495 U.S. 575, 589 (1990)).

categorically broader than the [Sentencing] Guidelines definition of 'drug trafficking offense' because it criminalizes possession or purchase of certain substances that are not covered by the CSA."[28] The Ninth Circuit subsequently revisited this question in *United States v. Valdavinos-Torres*,[29] where it emphasized that it "has held repeatedly that California's controlled substances schedules are broader than their federal counterparts."[30]

This court adopted the reasoning of *Valdavinos-Torres* in an unpublished opinion in *United States v. Lopez-Cano*,[31] which dealt with a conviction under a similar California statute, California Health & Safety Code § 11378.[32] We concluded, "for [a] conviction [under section 11378] to qualify as a drug trafficking offense, the government must establish that the substance the defendant was convicted of possessing for sale in the underlying California offense is covered by the CSA."[33]

We agree with Gomez-Alvarez that a conviction for possession of a controlled substance under section 11351 does not categorically qualify as a predicate "drug trafficking offense" under section 2L1.2, and we adopt the reasoning of the Ninth Circuit in *Leal-Vega* and *Valdavinos-Torres*. For a prior conviction to qualify as a "drug trafficking offense," the government must

---

[28] *Id.* at 1167.

[29] 704 F.3d 679 (9th Cir. 2012).

[30] *Id.* at 687 (citing *Ruiz-Vidal v. Gonzales*, 473 F.3d 1072, 1078 (9th Cir. 2007)). *Ruiz-Vidal* notes that, "[f]or instance, the possession of apomorphine is specifically excluded form Schedule II of the CSA, but California's Schedule II specifically includes it." *See* 473 F.3d at 1078 (citing 21 C.F.R. § 1308.12(b)(1) and Cal. Health & Safety Code § 11055(b)(1)(G)), *abrogated on other grounds by Kwong v. Holder*, 671 F.3d 872 (9th Cir. 2011); *see also id.* at 1078 n.6 ("Other substances such as Androisoxazole, Bolandiol, Boldenone, Oxymestrone, Norbolethone, Quinbolone, Stanozolol, and Stebnolone are punishable only under California law." (citing Cal. Health & Safety Code § 11056(f))).

[31] 516 F. App'x 350 (5th Cir. 2013).

[32] Section 11378, like section 11351, criminalizes possession of certain "controlled substance[s]." Cal. Health & Safety Code § 11378.

[33] *Lopez-Cano*, 516 F. App'x at 353.

No. 14-40059

establish that the substance underlying that conviction is covered by the CSA. We proceed to the modified categorical approach to consider whether the government met its burden to narrow the scope of the instant conviction to a qualifying element of section 11351 by the introduction of *Shepard*-approved documents.[34]

**b.**

The district court found, based on the information contained in the Complaint and the Abstract, that Gomez-Alvarez had been convicted of possessing heroin—the crime charged in the Complaint.[35] En route to making that finding, the district court concluded that the Complaint served as the charging document for the conviction.[36] "Under *Shepard*, a complaint may be a proper charging document for purposes of narrowing the scope of the

---

[34] The government contends that we are bound by our holding in *United States v. Palacios-Quinonez*, 431 F.3d 471 (5th Cir. 2005), to affirm the district court's application of the enhancement under the modified categorical approach. There, we considered on plain error review the defendant's contention that "although 'possession for sale' qualifies as a drug trafficking offense [under section 2L1.2], '*purchase* for sale' does not, and thus the enhancement [of his sentence] was improper because it is impossible to determine under which prong of the statute he was convicted." 431 F.3d at 473-74 (emphasis added). We agreed that it could not be determined from the record whether the defendant had been convicted under the possession prong or the purchase prong of section 11351. *See id* at 474 n.1. Nevertheless, we reasoned that a conviction under either prong would fall within the scope of "possession" as that term is defined in the application note to section 2L1.2, *see id.* at 474-76, and we affirmed the enhancement.

*Palacios-Quinonez* does not address the question at issue here: whether Gomez-Alvarez might have been convicted of a non-qualifying offense. *Palacios-Quinonez* appears to assume from the record that the underlying substance at issue was cocaine—an assumption the defendant-appellant does not appear to have challenged. *See id.* at 472 ("The enhancement was based on [the defendant-appellant's] California convictions of 'possession for sale' of cocaine . . . ."); *id.* at 473 ("Palacios-Quinonez contends . . . that his California conviction of possession for sale of cocaine does not qualify as a drug trafficking offense.").

[35] R. at 55 ("[The Abstract] doesn't create any doubt that's what the conviction was, was possession for sale of a controlled substance[,] to wit[,] heroin[,] was what was in the charging instrument [the Complaint].").

[36] *Id.*

9

conviction."[37] We have held that a sentencing court may rely on a charging document "unambiguously identifying the one particular subdivision charged . . . absent anything in the record affirmatively casting doubt on, or creating an ambiguity respecting, that conclusion."[38]

Under California criminal procedure, though, in some circumstances a criminal complaint does not serve as the charging document for a subsequent conviction:

> [A] felony prosecution commences with a criminal complaint. After arraignment, if the magistrate judge determines that there is sufficient cause to believe that the defendant might be guilty of the charges listed in the complaint, the magistrate orders that the defendant be held to answer. At that point, the parties may stipulate that the complaint be deemed an information, one form of a charging instrument. If not, an information must be filed within 15 days of the order . . . There is no requirement that the charges in the information be identical to those in the complaint.[39]

Where a separate information has been filed, the original criminal complaint cannot be relied upon under *Shepard*, because the defendant may ultimately have been convicted of a different offense under a different subsection of the statute.[40] Gomez-Alvarez contends that the district court erred in relying on the Complaint as the charging document because the government did not

---

[37] *United States v. Castellon-Aragon*, 772 F.3d 1023, 1025 (5th Cir. 2014) (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)).

[38] *United States v. Torres-Diaz*, 438 F.3d 529, 535 (5th Cir. 2006) ("At the very least, this is so where, as here, no claim is made before the district court that the prior conviction was *in actuality* under a different subdivision than that reflected in the charging instrument or *in actuality* the conviction was based on some other, materially different charging document.").

[39] *United States v. Lopez-Cano*, 516 F. App'x 350, 353 (5th Cir. 2013) (per curiam) (unpublished) (citations omitted).

[40] *See United States v. Martinez-Paramo*, 380 F.3d 799, 805 (5th Cir. 2004).

disprove the possibility that a separate information was filed that superseded the Complaint. We disagree.

We have held that a district court cannot rely on a criminal complaint to establish the elements of a prior conviction where evidence in the record affirmatively indicates that a separate information superseded the complaint. For example, in *Lopez-Cano*, the docket sheet and the case summary for the defendant's conviction both "indicate[d] that an information was filed," but the information was not in the record.[41] "Because the . . . information . . . [was] the charging document to which [the defendant] actually pled guilty," we held that "the complaint [was] not a proper *Shepard* document."[42] We reached a similar holding in *Martinez-Paramo*, where the government admitted that an information existed, but it was not in the record.[43]

This case is different. Both Gomez-Alvarez and the probation officer compiling the PSR unequivocally referred to the Complaint as the "charging instrument" for the conviction.[44] On those representations, the court concluded the same.[45] On appeal, Gomez-Alvarez does not affirmatively "claim that he was convicted for an offense other than the one listed in the Complaint; neither does he contend that a different charging instrument was issued."[46] Instead, he asserts that there is nothing in the record that affirmatively shows that the parties agreed to proceed on the Complaint. Gomez-Alvarez argues in essence that the district court erred "in failing to require the [g]overnment to prove a negative: that no superseding charging instrument was filed such that [he]

---

[41] 516 F. App'x at 353-54.

[42] *Id.*

[43] 380 F.3d at 805 ("Not only did the [g]overnment state at oral argument that an information exists, but also that the plea agreement and plea colloquy are available.").

[44] R. at 67, 106.

[45] *Id.* at 55.

[46] *United States v. Cruz-Campos*, 551 F. App'x 251 (5th Cir. 2014) (per curiam) (unpublished).

might have pled guilty to an offense that didn't specify [heroin]."[47] But the absence of a separate information in the record could reasonably indicate that the parties agreed to proceed on the Complaint as the charging instrument, in accordance with California criminal procedure. And, in any event, there exists nothing in the record "affirmatively casting doubt on, or creating an ambiguity respecting," the district court's finding that the Complaint served as the charging document.[48] We conclude that the district court's finding was plausible in light of the record as a whole.

Gomez-Alvarez next argues that the Abstract's failure to specify a controlled substance creates ambiguity as to whether the ultimate conviction was for possession of *heroin* as opposed to a different drug criminalized under section 11351 but not covered by the CSA. Again, we disagree. The Complaint expressly charged possession of heroin. The Abstract's failure to specify a controlled substance provides no affirmative indication that the conviction was for anything other than possession of heroin as charged in the Complaint. The district court limited its reliance on the Abstract to that document's only permissible use, "proving the existence of [the] prior . . . conviction."[49]

We conclude therefore that the government met its burden to establish that the conviction under section 11351 was for possession of heroin. As heroin is listed as a "controlled substance" under the CSA, and as the conviction garnered a two-year sentence of imprisonment, we hold that the conviction

---

[47] *United States v. Castellon-Aragon*, 772 F.3d 1023, 1026 (5th Cir. 2014).

[48] *United States v. Torres-Diaz*, 438 F.3d 529, 535 (5th Cir. 2006).

[49] *United States v. Moreno-Florean*, 542 F.3d 445, 449 n.1 (5th Cir. 2008) (citing *United States v. Neri-Hernandes*, 504 F.3d 587, 590-92 (5th Cir. 2007) (other citations omitted)). We have held that California abstracts of judgment "should not be added to the list of documents *Shepard* authorizes," because they do not reflect "an 'explicit factual finding by the trial judge to which the defendant assented.'" *United States v. Gutierrez-Ramirez*, 405 F.3d 352, 359 (5th Cir. 2005) (noting "the low level of reliability associated with abstracts of judgment in California"). A district court cannot rely on an abstract of judgment for the purpose of narrowing the scope of a conviction to a qualifying subsection. *Id.*

qualifies as a "drug trafficking offense" for purposes of enhancement under section 2L1.2.

## 2. *Whether the Person Convicted was Gomez-Alvarez*

The district court determined that Gomez-Alvarez was convicted under section 11351 using an alleged alias, "Jorge Ortiz." Gomez-Alvarez does not affirmatively deny that he and Jorge Ortiz are one and the same. He argues, though, that the government has not established with credible documentation the fact that he was the person convicted. Reviewing for clear error, we consider the plausibility of the district court's finding in light of the entire record.[50]

For sentencing purposes, a district court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."[51] "As a general rule, information in the [PSR] is presumed reliable and may be adopted by the district court without further inquiry if the defendant fails to demonstrate by competent rebuttal evidence that the information is materially untrue, inaccurate or unreliable."[52] "The defendant bears the burden of demonstrating that the information . . . is materially untrue . . . [and i]f the defendant fails to offer rebuttal evidence . . . the sentencing court is free to adopt the information without further inquiry."[53]

In *United States v. Floyd*,[54] we held that this general rule "is not without its limits . . . [as] there must be an acceptable evidential basis for the court's

---

[50] *United States v. Ruiz*, 621 F.3d 390, 396 (5th Cir. 2010) (per curiam).

[51] U.S.S.G. § 6A1.3(a).

[52] *United States v. Carbajal*, 290 F.3d 277, 287 (5th Cir. 2002) (internal quotation marks omitted).

[53] *United States v. Ramirez*, 367 F.3d 274, 277 (5th Cir. 2004) (citations omitted).

[54] 343 F.3d 363 (5th Cir. 2003).

factfindings at the sentencing hearing."[55] There, the defendant affirmatively denied having a prior conviction, and the only evidence to the contrary was a probation officer's unsworn statements.[56] These facts make that case inapposite here. Unlike the defendant in *Floyd*, Gomez-Alvarez has never denied he was convicted using the alias "Jorge Ortiz" in California in 2006. Moreover, the government introduced numerous pieces of identifying information tying Gomez-Alvarez to the 2006 California conviction.

The PSR listed "Jorge Ortiz" as one of several aliases used by Gomez-Alvarez. It listed Gomez-Alvarez's "real" birthdate as January 9, 1978, and indicated that he sometimes gave as his birthdate March 20, 1983. Gomez-Alvarez did not object to these lists and does not now dispute their validity. The PSR asserted that in 2006 Gomez-Alvarez was convicted in California using the name Jorge Ortiz. The Complaint, attached to the PSR, charged Jorge Ortiz, DOB: March 20, 1983. The corresponding Abstract, also attached, named Jorge Ortiz, DOB: January 9, 1978, as the person convicted. Although the two birthdates differ from each other, both coincide with birthdates used by Gomez-Alvarez (one with his unobjected-to "real" birthdate). Again, Gomez-Alvarez does not dispute these facts. In addition, the Complaint recited that "Jorge Ortiz" had previously been convicted in Los Angeles County on November 18, 1997. This information, too, coincides with a prior conviction listed in the PSR—one to which Gomez-Alvarez did not object.

As Gomez-Alvarez offered no rebuttal evidence to refute the information contained in the PSR, the district court was free to adopt it without further inquiry.[57] Given the whole record, we conclude that the district court's finding was plausible.

---

[55] *Id.* at 372-73 (internal quotation marks and citation omitted).
[56] *Id.*
[57] *Ramirez*, 367 F.3d at 277.

No. 14-40059

## III.

Gomez-Alvarez's sentence is AFFIRMED.