# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-11766

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

DIONICIO ELIZALDE-PEREZ,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

March 7, 2018

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:15-CR-563-1

Before STEWART, Chief Judge, and CLEMENT and SOUTHWICK, Circuit Judges.

PER CURIAM:*

In this appeal, we review the district court's conclusion that a sentence enhancement was warranted under the 2015 United States Sentencing Guidelines (the "Sentencing Guidelines") for a prior drug trafficking conviction under state law. We affirm.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-11766

I.

Defendant-Appellant Dionicio Elizalde-Perez pleaded guilty without a plea agreement to one count of illegally re-entering the country in violation of 8 U.S.C. § 1326(a) on March 8, 2016. The Presentence Report ("PSR") noted that the crime had a base offense level of 8 under § 2L1.2 of the 2015 Sentencing Guidelines, but recommended a 16-level enhancement because of a prior conviction for a "drug trafficking offense." Specifically, the PSR noted that Elizalde-Perez had been convicted under § 481.112 of the Texas Health & Safety Code (the "Code") for "Unlawful Deliverance of a Controlled Substance." Applying a reduction for Elizalde-Perez's acceptance of responsibility for the crime, the PSR ultimately recommended that the offense level be set at 21. After incorporating various other factors, including Elizalde-Perez's significant criminal history, the PSR established a sentencing range of 77–96 months.

On November 1, 2016—one month before Elizalde-Perez's sentencing hearing—the 2016 Sentencing Guidelines were enacted. An amended PSR was issued on November 7, applying the new Guidelines and responding to Elizalde-Perez's objections to the previous PSR. Answering his objection to the 16-level enhancement, the amended PSR noted that, while the enhancement was appropriate under the prior Guidelines, it was "no longer applicable" under the new ones. As a result of this and other changes, the amended PSR recommended he receive a lower, 12-level enhancement to the violation and calculated a sentencing range of 37–46 months.

At the sentencing hearing, Elizalde-Perez again raised his objection to the imposition of a 16-level enhancement under the 2015 Guidelines. He noted that the argument was not moot because the original recommended sentence would have been only 15–21 months—that is, lower than the amended PSR's recommendation under the 2016 Guidelines—had the enhancement not applied. If the original recommendation was improper, Elizalde-Perez was

2

entitled to a sentence under the 2015 Guidelines. *Cf. United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

The district court overruled the objection, concluding that the enhancement was proper. It then sentenced Elizalde-Perez to 37 months imprisonment, in accordance with the amended PSR's recommendations under the 2016 Sentencing Guidelines. Elizalde-Perez appealed.

II.

The sole issue before us concerns the 16-level enhancement under the 2015 Guidelines.[1] Specifically, Elizalde-Perez argues that the "Unlawful Deliverance of a Controlled Substance" offense codified at § 481.112 of the Code defines a drug trafficking offense more broadly than § 2L1.2 of the 2015 Guidelines. Accordingly, applying the categorical approach, his conviction under § 481.112 should not have led to the sentence enhancement.

We review the conclusion "that a prior state conviction constitutes a drug trafficking offense [under the Sentencing Guidelines] de novo." *United States v. Lopez-Salas*, 513 F.3d 174, 178 (5th Cir. 2008). We "affirm an enhancement on any ground supported by the record." *United States v. Garcia-Gonzalez*, 714 F.3d 306, 314 (5th Cir. 2013).

The relevant inquiry proceeds in two steps. At the first step, we determine whether we should apply the categorical approach or a modified categorical approach when comparing the state and federal definitions of the crime. *Mathis v. United States*, 136 S. Ct. 2243, 2248–49 (2016). This conclusion turns on whether the state statute in question "sets out a single (or 'indivisible') set of elements to define a single crime," or whether it "define[s]

---

[1] Elizalde-Perez also argues that his sentence was improperly enhanced under 8 U.S.C. § 1326. He concedes that his argument is foreclosed by *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), but seeks to preserve the issue for possible Supreme Court review. We agree that his argument remains foreclosed.

multiple crimes." *Id.* At the second step, we apply the appropriate approach to the provisions at issue. *Id.*

We recently reversed our own precedent in resolving the first step. Whereas we used to consider § 481.112(a) of the Code a divisible statute because it outlawed both delivery of controlled substances and possession with the intent to deliver, *United States v. Ford*, 509 F.3d 714, 716–17 (5th Cir. 2007), we have since concluded that "[s]ection 481.112(a) is an indivisible statute to which the modified categorical approach does not apply." *United States v. Tanksley*, 848 F.3d 347, 352 (5th Cir. 2017) (noting that, in light of this conclusion, *Ford*'s holding "cannot stand"). Our change of position relied on the Supreme Court's guidance in *Mathis*, which noted that state courts can provide the definitive answer as to the divisibility of state statutes. 136 S. Ct. at 2256. We found this definitive answer on § 481.112 from the Texas Court of Criminal Appeals, which concluded that "[s]ection 481.112 provides *several different means* for committing the offense of delivery . . . from the offer to sell, to the possession of the drugs with the intent to deliver them, to the actual delivery itself." *Tanksley*, 848 F.3d at 352 (quoting *Lopez v. State*, 108 S.W.3d 293, 299–300 (Tex. Crim. App. 2003)).

The categorical approach requires us to "focus solely on whether the elements of the crime of conviction sufficiently match the elements of [the crime defined in the Sentencing Guidelines], while ignoring the particular facts of the case." *Mathis*, 136 S. Ct. at 2248. More specifically, we must determine whether the crime of conviction's elements are either "the same as, or narrower than" the definition in the Guidelines. *Id.* "[I]f the crime of conviction covers any more conduct than" the Guidelines offense, the former cannot qualify as a violation of the latter—"even if the defendant's actual conduct . . . fits within the [latter] offense's boundaries." *Id.*

No. 16-11766

We begin this analysis by reviewing the text of the two provisions. The 2015 Sentencing Guidelines permitted a 16-level sentencing increase if "the defendant previously was deported, or unlawfully remained in the United States, after . . . a drug trafficking offense for which the sentence imposed exceeded 13 months." U.S.S.G. § 2L1.2(b)(1)(A)(i) (2015). A "drug trafficking offense" includes "an offense under . . . state . . . law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute or dispense." U.S.S.G. § 2L1.2 cmt. n.1(B)(iv) (2015).

Section 481.112(a) of the Code prohibits defendants from "knowingly manufactur[ing], deliver[ing], or possess[ing] with intent to deliver" controlled substances. A separate provision of the Code provides the definition for "deliver." The term "means to transfer, actually or constructively, to another a controlled substance . . . . [and] includes offering to sell a controlled substance." Tex. Health & Safety Code Ann. § 481.002(8).

Elizalde-Perez asserts that there is a single difference between the two statutes: the Code defines the drug offense to include possession with the intent to offer to sell, while the Sentencing Guideline does not. He supports this interpretation by noting that it is a crime under § 481.112 to "possess[ ] with intent to deliver" and § 481.002(8) defines "delivery" to include "offering to sell." By contrast, under the applicable provision in the Sentencing Guidelines, drug trafficking includes the *act* of "offer[ing] to sell" drugs, but omits the *intent* to "offer to sell" from its list of possession charges that qualify. U.S.S.G. § 2L1.2 cmt. n.1(B)(iv) (2015).

But Elizalde-Perez has highlighted a textual distinction between the provisions that lacks a meaningful difference. We have considered this interpretative question before. In *United States v. Ford*, we compared the

5

definition of drug possession in the same provision of the Code with the definition of drug possession in an identically-worded provision of the Guidelines—the Career Offender provision at § 4B1.2(b).[2] 509 F.3d at 717. We concluded that "it is pure sophistry to distinguish" between possession with the intent to "deliver drugs" under the Code—which, again, explicitly includes possession with the intent to offer for sale—and possession with the intent to "distribute drugs" as defined by § 4B1.2—which does not explicitly include possession with the intent to offer for sale. *Id.*

Our conclusion was based on a review of prior cases in which we found the absence of the "offer to sell" language in the Guidelines significant. *Id.* at 716–17. We determined that the *act* of "offering to sell" was distinct from the other drug trafficking acts listed in the Guidelines because "[o]ne may 'offer to sell' drugs without possessing those drugs." *Id.* at 717. But no such distinction exists when the defendant's underlying conviction was for illegal drug possession. *Id.* Thus, we concluded that a conviction under the Code for illegal drug possession was "equivalent to the drug trafficking offense" under the Guidelines and could be used to enhance the defendant's sentence. *Id.*; *see United States v. Olson*, 849 F.3d 230, 232 (5th Cir. 2017) (citing *Ford* for the proposition, "[p]ossession of a controlled substance with the intent to sell, deliver or, distribute it plainly qualifies as a controlled-substance offense under § 4B1.1").[3]

---

[2] Because of the similarities between § 4B1.2 and § 2L1.2 in the Guidelines, "we often treat cases dealing with [them] interchangeably," so long as there are no "salient statutory distinction[s]" between them. *United States v. Herrera-Alvarez*, 753 F.3d 132, 136 (5th Cir. 2014) (internal quotation omitted). Here, there are no distinctions: Section 4B1.2(b)'s definition of a "controlled substance offense" includes "the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." This mirrors the definition of "drug trafficking" offense for possession in § 2L1.2.

[3] As already noted, *Ford* was abrogated by *Tanksley* because it applied the modified categorical approach to § 481.112. In other words, *Ford* was overturned only insofar as it considered the Code's drug possession offense as a separate and distinct crime from the other

No. 16-11766

Our conclusion in *Ford* resolves Elizalde-Perez's assertion here: Section 2L1.2's omission of the phrase, "offer to sell," from its definition of the possessory crime does not create a meaningful distinction from § 481.112 of the Code. Moreover, § 2L1.2 defines "drug trafficking" to specifically include the act of "offer[ing] to sell" contraband. U.S.S.G. § 2L1.2 cmt. n.1(B)(iv) (2015). Accordingly, our historic concern regarding the omission of this phrase (as chronicled in *Ford*) does not apply.[4] Taken as a whole, then, the elements of Elizalde-Perez's drug trafficking conviction under the Code fall entirely within the 2015 Guideline's definition. Accordingly, the district court did not err when it determined that this prior conviction merited an enhancement under the 2015 Guidelines.

Lastly, we note that we recently imposed a new requirement on defendants seeking to challenge a sentence enhancement by applying the

delivery offenses. *See Tanksley*, 848 F.3d at 351. This conclusion is untenable in light of the Supreme Court's guidance in *Mathis*: Section 481.112 is indivisible. *Id.* at 352.

But, under the rule of orderliness, a prior panel's interpretation of law remains binding so long as it has not specifically been overridden by statutory amendment, this court sitting en banc, or the Supreme Court. *Vaughan v. Anderson Reg'l Med. Ctr.*, 849 F.3d 588, 591 (5th Cir. 2017) ("[E]ven if a panel's interpretation of the law appears flawed, the rule of orderliness prevents a subsequent panel from declaring it void." (internal citation omitted)). And although *Mathis* overturned *Ford*, it did not do so on the basis of *Ford*'s interpretation of the Code or the Guidelines. Accordingly, *Ford*'s interpretation of the "offer to sell" provision in the Code was unaffected. *See Cent. Pines Land Co. v. United States*, 274 F.3d 881, 893–94 (5th Cir. 2001); *cf. Olson*, 849 F.3d at 232 (issued after *Tanksley*, yet still citing *Ford* for the proposition that "[p]ossession of a controlled substance with the intent to sell, deliver or, distribute it plainly qualifies as a controlled-substance offense under § 4B1.1").

[4] The phrase was first added to § 2L1.2 in the 2008 Sentencing Guidelines. *Compare* U.S.S.G. § 2L1.2 cmt. n.1(B)(iv) (2007) *with* U.S.S.G. § 2L1.2 cmt. n.1(B)(iv) (2008). We reject Elizalde-Perez's argument that this modification somehow overturns *Ford*'s interpretation of the Guideline's definition of the possessory offense, the wording of which was unaltered. Furthermore, we note that the addition came soon after this court—as well as other circuit courts—concluded that "drug trafficking" under § 2L1.2 did not include the participation in drug transactions when that participation occurred without actual or constructive possession of the drugs. *See, e.g.*, *United States v. Gonzales*, 484 F.3d 712 (5th Cir. 2007); *United States v. Aguilar-Ortiz*, 450 F.3d 1271 (11th Cir. 2006) (soliciting to sell drugs not covered by § 2L1.2); *United States v. Garza-Lopez*, 410 F.3d 268 (5th Cir. 2005).

categorical approach. Specifically, when defendants argue that a statute of conviction is overbroad, they must show "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside" the Guideline's definition. *United States v. Castillo-Rivera*, 853 F.3d 218, 222 (5th Cir. 2017) (en banc) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)); *see United States v. Espinoza-Bazaldua*, No. 16-41069, 2017 WL 4641264, at *4 (5th Cir. Oct. 16, 2017). Defendants "cannot simply point to certain crimes that may be included" in the statute of conviction, but are omitted in the other; instead, they must show that the state has "*actually applied* [the statute] in this way." *Castillo-Rivera*, 853 F.3d at 222.

*Castillo-Rivera* was issued months before Elizalde-Perez submitted his briefing. Yet no mention of the case is made, nor did he provide any evidence that Texas has enforced § 481.112 against someone for possessing drugs with the intent to offer to sell them. Accordingly, even if we were persuaded that Elizalde-Perez had pointed out a meaningful distinction between the statute and the Guidelines, we have an independent, alterative basis to reject his claim.

AFFIRMED.

8